Mary S. SMITH, Plaintiff-Appellee,

v.

Don CHAPMAN, d/b/a Don Chapman Motor Sales, Defendant-Appellant.

No. 77–3001.

United States Court of Appeals,
Fifth Circuit.

March 31, 1980.

William R. Travis, Austin, Tex., for defendant-appellant.

James G. Boyle, Austin, Tex., for plaintiff-appellee.

Before JONES, BROWN and RUBIN, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

On October 8, 1974, the Appellee, Mary Smith (Smith), entered into a retail installment sales contract with the Appellant Don Chapman, d/b/a Don Chapman Motor Sales (Chapman), for the purchase of a 1969 Mercury. As part of the purchase agreement Smith carried insurance on the car. Several months after the purchase, the automobile was wrecked. The insurance proceeds paid off the sum still owed to Chapman and the amount representing Smith's equity in the automobile. Smith then asked Chap-

man to provide her with a new automobile at no other charge than the continuation of her monthly payments. When Chapman refused, Smith filed this suit on July 9, 1975, alleging violations of the Truth in Lending Act, 15 U.S.C.A. § 1601, *et seq.* (1974 & Supp.1979) (TILA), regulations promulgated thereunder, 12 CFR § 226.1, *et seq.* (1979) (Regulation Z), and the Texas Consumer Credit Code, Tex.Civ.Stat.Ann. art. 5069–7.01, *et seq.* (1971 & Supp.1979) (TCCC). Both parties filed Motions for Summary Judgment. Following recommendations made by a Special Master, the District Court denied Chapman's Motion for Summary Judgment but granted Smith's Motion, finding that Chapman had violated three provisions of Regulation Z and two provisions of the TCCC.[1] Statutory penalties of twice the amount of the finance charges in connection with the transaction, plus attorney's fees, were imposed for violation of the federal laws and for violation of the state regulations, the entire penalty totalling four times the finance charge.[2] 15 U.S.C.A. § 1640(a); Tex.Civ.Stat.Ann. art. 5069–8.01. We affirm.

## I. The Purpose Of TILA And The Standard Of Compliance

The foundation of Chapman's argument is that, although he did not specifically comply with the terms of TILA and Regulation Z, he is in substantial compliance and that, since all of the terms of a contract in question were explained to and understood by Smith, Chapman has achieved the purpose of TILA and should not be penalized. The Appellant misconceives both the applicable standard for compliance with TILA, as well as the purpose of the Act.

■ First, the purpose of TILA is to promote the "informed use of credit . . . [and] an awareness of the cost thereof by consumers" by assuring "a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the

various credit terms available to him . . .." 15 U.S.C.A. § 1601.

■ It is now well-settled that an objective standard is used in determining violations of TILA. It is not necessary that the plaintiff-consumer actually have been deceived in order for there to be a violation. *McGowan v. King, Inc.*, 569 F.2d 845, 849 (5th Cir. 1978). TILA is primarily enforced through lawsuits filed by consumers acting as "private attorneys general." *McGowan v. King, supra*, 569 F.2d at 848–49; *McGowan v. Credit Center of North Jackson, Inc.*, 546 F.2d 73, 77 (5th Cir. 1977); *Sosa v. Fite*, 498 F.2d 114, 121 (5th Cir. 1974); *Thomas v. Myers-Dickson Furniture Company*, 479 F.2d 740, 748 (5th Cir. 1973). In fact, consumers who are aware of the true terms of a contract are more able to see that these terms are not clearly and conspicuously disclosed on the installment sales contract form. Thus, the purpose of the Act is more readily served by allowing lawsuits by these consumers who are less easily deceived.

> The remedial scheme in the TIL Act is designed to deter generally illegalities which are only rarely uncovered and punished, and not just to compensate borrowers for their actual injuries in any particular case.

*Williams v. Public Finance Corp.*, 598 F.2d 349, 356 (5th Cir. 1979).

■ Second, the applicable standard is strict compliance with the technical requirements of the Act. Only adherence to a strict compliance standard will promote the standardization of terms which will permit consumers readily to make meaningful comparisons of available credit alternatives. 15 U.S.C.A. § 1601; *Pennino v. Morris Kirschman and Co., Inc.*, 526 F.2d 367, 370 (5th Cir. 1976); *Houston v. Atlanta Federal Savings & Loan Association*, 414 F.Supp. 851, 855 (N.D.Ga.1976); *Powers v. Sims & Levin Realtors*, 396 F.Supp. 12, 20 (E.D.Va.1975).

---

1. *Smith v. Chapman*, 436 F.Supp. 58 (W.D.Tex. 1977).

2. The propriety of the imposition of the double finance charge penalty twice, once for the federal and once for the state violation, was not raised by the Appellants, and we do not pass on it here.

■ Strict compliance does not necessarily mean punctilious compliance if, with minor deviations from the language described in the Act, there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation. This is what this Court meant in *Dixon v. D. H. Holmes Company, Ltd.,* 566 F.2d 571 (5th Cir. 1978). In that case, we affirmed a summary judgment in favor of a defendant creditor by adopting the District Court's oral reasons for finding compliance with TILA. The District Court Judge stated that "substantial and not sacramental compliance is what is necessary," *id.* at 571, and that "[t]he question is not whether something is capable of semantic improvement but whether it contains a substantial and *accurate disclosure . . .,*" *id.* at 573 (emphasis added). Chapman contends this opinion creates a substantial compliance standard which is in conflict with other strict compliance cases within the Circuit. We do not see any conflict of that sort. The District Court Judge in *Dixon* was merely saying it is not necessary to "flyspeck" the language of credit disclosures. He was not saying it is unnecessary to make the disclosure in the proper technical form and in the proper locations on the contract, as mandated by the requirements of TILA and Regulation Z.

Moreover, the *Dixon* case imposes an objective standard—the District Court Judge looked at the provisions in question objectively and concluded that they were clearly stated. Chapman would have us hold, not only that the applicable standard of compliance is less than strict, but also that it is achieved when the debtor in question understood the terms of the contract. We reject Chapman's proposed standard of review. This brings us to each of the contract provisions at issue to determine if they are in accordance with TILA and the TCCC.

## II. The "One-Sided" Requirement Of Regulation Z

The "Motor Vehicle Contract" that Smith entered into with Chapman Motors was a one-page document with terms printed on both sides of the page. The front of this document did not mention the security interest that the seller retained in the car; this was set forth as Condition No. 1 on the back of the page. Delinquency charges were stated on the front and as Condition No. 6 on the back of the document as follows:

> The Seller, at its option, shall collect a delinquency charge on each installment in default for a period of more than ten days in an amount not to exceed 5% of each installment or $5.00 whichever is less, or, in lieu thereof, interest after maturity on each such installment, not to exceed the highest lawful contract rate.

The specific interest rate after maturity, imposed by Condition No. 10 on the back of the contract, was ten percent (10%) per annum. At the bottom of both sides of the page was printed: "NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION, ALL TERMS OF WHICH ARE INCORPORATED BY REFERENCE."

Smith alleged in her complaint that the failure to state these provisions on the front side of the page was a violation of Regulation Z, 12 CFR § 226.8(a)(1) which provides:

> § 226.8  **Credit other than open end—specific disclosures.**
>
> (a) *General rule.* Any creditor when extending credit other than open end credit shall, in accordance with § 226.6 and to the extent applicable, make the disclosures required by this section with respect to any transaction consummated on or after July 1, 1969.
>
> \*    \*    \*    \*    \*    \*
>
> All of the disclosures shall be made together on either:
>
> (1) The note or other instrument evidencing the obligation on the same side of the page and above the place for the customer's signature;  or
>
> (2) One side of a separate statement which identifies the transaction.

Section 226.8(b) lists the items which must be disclosed under § 226.8(a)(1):

(b) *Disclosures in sale and nonsale credit.* In any transaction subject to this section, the following items, as applicable, shall be disclosed:

\* \* \* \* \* \*

(4) The amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments.

(5) A description or identification of, the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a security interest in such property which the creditor is unable to identify.

The general rule for disclosures is that they "be made clearly, conspicuously, in meaningful sequence, in accordance with the further requirements of [§ 226], and at the time and in the terminology prescribed in applicable sections." 12 CFR § 226.6(a).

Chapman first contends that he has complied with the requirements of § 226.-8(a)(1) by including the notice of incorporation by reference of terms on both sides of the page. Under a strict compliance standard, incorporating by reference terms on the backside of a page when it is explicitly required that these terms appear on the front side, would be a violation of TILA. *See Gennuso v. Commercial Bank & Trust Co.,* 566 F.2d 437, 440–42 (3d Cir. 1977) (reference by incorporation to another document describing property to which security interest relates held to be in violation of § 226.8(a)).

Chapman's next argument is that, despite the clarity and specificity of these regulations, he has not violated TILA or Regulation Z because he is in compliance with an interpretive regulation, § 226.801, which establishes a third way of making the required disclosures:

§ **226.801 Location of disclosures when contract, security agreement, and evidence of transaction are combined in a single document.**

(a) Some creditors incorporate the terms of a contract, a security agreement and evidence of a transaction in a single document. These documents are designed for processing by mechanical and electronic equipment. If all of the required disclosures under § 226.8 should be placed on the face of such a document, the creditor will be unable to utilize conventional accounting and record keeping equipment because of the size of the resulting document. The question arises as to whether required disclosures may be made on the face and the reverse side of such a document.

(b) Where a creditor elects to combine disclosures with the contract, security agreement, and evidence of a transaction in a single document, the disclosures required under § 226.8 shall, in accordance with § 226.6, be made on the face of that document, on its reverse side, or on both sides: *Provided,* That the amount of the finance charge and the annual percentage rate shall appear on the face of the document, and, if the reverse side is used, the printing on both sides of the document shall be equally clear and conspicuous, both sides shall contain the statement, "NOTICE: See other side for important information," and the place for the customer's signature shall be provided following the full content of the document.

Chapman has not attempted to establish that his single-page Motor Vehicle Contract is designed for processing by mechanical or electronic equipment. Instead, he contends that the operative language of this provision, contained in Part (b) of the section, does not mention mechanical or electronic processing and that therefore, the District Court erred in holding that such processing is a prerequisite to application of § 226.801.

Chapman relies on *Charles v. Krauss Company, Ltd.,* 572 F.2d 544 (5th Cir. 1978), in which this Court allowed a creditor to use a § 226.801 form for its installment sales contracts, even though the form was not designed for mechanical or electronic

processing. This holding, however, was not based on a conclusion that the operative language of the regulation does not mention mechanical processing. In fact, we rejected that argument when it was made by Krauss Company, specifically holding that the regulation only applied to forms designed for mechanical processing. *Id.* at 548.

We held in favor of Krauss Company only because it successfully asserted the defense of unintentional violation and bona fide error created by 15 U.S.C.A. § 1640(c).[3] Krauss used the one-page form for easier retrieval from file drawers and believed that this was mechanical processing covered by the statute. *Id.* at 549. Chapman also contends that, even if mechanical or electronic processing must be shown to invoke § 226.801 he believed in good faith that this showing was not necessary, and thus he cannot be penalized. However, Chapman did not even mention his good faith defense until the oral argument of this appeal. Even then, the only evidence of good faith he presented was the fact that he had complied with § 226.801. Even if he did comply (and his noncompliance with this regulation is discussed below), this is not enough evidence to establish this defense.

We approve of the District Court's reliance on two Federal Reserve Board letters which interpret § 226.801 to require a showing that the two-sided form is designed for mechanical or electronic processing. F.R.B. Letter of July 31, 1974, No. 825, 5 CCH CCG § 31,147; F.R.B. Letter of March 19, 1976, No. 1016, 5 CCH CCG ¶ 31,356. The Federal Reserve Board continues to take this position:

> . . . As explained in prior Public Information Letters, 527, 782, 825 and 1016, copies of which are enclosed, this interpretation was written to alleviate a specific problem, and it only applies when the contract security agreement (if any), and evidence of the transaction are com-

bined in a single document designed for processing by mechanical or electronic equipment. . . . If the combined note/disclosure statement/security agreement to which you refer is not of the type described in the first paragraph of § 226.-801, the interpretation would not apply.
. . .

F.R.B. Letter of February 10, 1977, No. 1154, 5 CCH CCG ¶ 31,536.

This Court has consistently given great weight to administrative agency interpretations of their own regulations. *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1270 (5th Cir. 1978); *Florida Sugar Cane League, Inc. v. Usery*, 531 F.2d 299, 304 (5th Cir. 1976); *Roy Bryant Cattle Co. v. United States*, 463 F.2d 418, 420 (5th Cir. 1972); *Allen M. Campbell Co. General Contractors, Inc. v. Lloyd Wood Construction Co.*, 446 F.2d 261, 265 (5th Cir. 1971). In particular Federal Reserve Board interpretations of Regulation Z are usually followed by the Fifth Circuit. *Anthony v. Community Loan & Investment Corp.*, 559 F.2d 1363, 1367 (5th Cir. 1977); *Martin v. Commercial Securities Co., Inc.*, 539 F.2d 521, 524 (5th Cir. 1976); *Meyers v. Clearview Dodge Sales, Inc.*, 539 F.2d 511, 517 (5th Cir. 1976); *but see Pollock v. General Finance Corp.*, 552 F.2d 1142, 1144 (5th Cir. 1977). And this Court has specifically followed the Federal Reserve Board letters interpreting § 226.801. *Charles v. Krauss Company, supra*, 572 F.2d at 547–48. *Cf. Philbeck v. Timmers Chevrolet, Inc.*, 361 F.Supp. 1255, 1259–60 (N.D.Ga.1973), *rev'd on other grounds*, 499 F.2d 971 (5th Cir. 1974).

Finally, even if § 226.801 were applicable, Chapman has not complied with it. That regulation requires, among other things, that "the place for the customer's signature shall be provided following the full content of the document," a provision with which Chapman has not complied.

---

**3.** 15 U.S.C.A. § 1640(c):

A creditor may not be held liable in any action brought under this section for a violation of this part if the creditor shows by a preponderance of evidence that the violation

was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

### III. Clear Disclosure Of The Delinquency Charge

■ Chapman particularly objects to the District Court's finding of a violation of § 226.8(a)(1) concerning the disclosure of delinquency charges.[4] The District Court's reasoning was that, although the contract form did contain a statement on the front describing the delinquency charge, this description was not sufficiently "clear" as required by § 226.6(a) of Regulation Z. Chapman's challenge to this holding rests on the similarity of the delinquency charge disclosure to the article of the TCCC which creates a creditor's right to impose a delinquency charge, Tex.Civ.Stat.Ann. art. 5069–7.03(6).[5] The fact that the delinquency charge disclosure tracks the language of the TCCC provision, Chapman argues, should mean that it is not unclear. Furthermore, Chapman contends that although the language of this disclosure does not quote the amount of post-maturity interest that could be imposed by the creditor, it does disclose the "method of computing the amount," 12 CFR § 226.8(b)(4), *supra* at 972, that is, after maturity "on each installment not to exceed the highest lawful contract rate."

Again, we must agree with the District Court. The term "highest lawful contract rate" is meaningless to most consumers. Only as Condition No. 10 on the backside of the contract is it disclosed that the highest lawful contract rate in Texas is 10%. Besides, the disclosure concerning delinquency charged is not that 10% will be charged, but that the post-maturity interest *will not exceed* ten percent. Thus, even if all the delinquency charge disclosures on the docu-

ment, front and back, are read together, it is still unclear exactly what percentage post-maturity interest will be imposed.

The purpose of the requirement of clear disclosure under 15 U.S.C.A. § 1639 and the regulations promulgated thereunder is to provide the consumer with an easy reference so that he can comparison shop. 15 U.S.C.A. § 1601; S.Rep.No.392, 90th Cong., 1st Sess. 1 (1967); *Philbeck v. Timmers Chevrolet, supra*, 499 F.2d at 976. We fail to see how the consumer can comparison shop when he is unable to compute what the post-maturity interest rate would be under an installment sales contract.

### IV. Disclosure Of Sales Tax As An "Official Fee"

■ Chapman next takes issue with the District Court's holding that the listing of the sales tax on the automobile contract form as an "official fee," and not in the blank labelled "Cash Price (Including Sales Tax)," violated Regulation Z and the TCCC.[6]

We address the Regulation Z question first. 12 CFR § 226.8(c)(8)(i) provides:

*Credit sales.* In the case of a credit sale, in addition to the items required to be disclosed under paragraph (b) of this section, the following items, as applicable, shall be disclosed:

\* \* \* \* \* \*

(8) Except in the case of a sale of a dwelling:

(i) The total amount of the finance charge, using the term "finance charge," and where the total charge consists of

---

4. Text of disclosure set forth *supra* at 972.

5. The holder of any retail installment contract may collect a delinquency charge on each installment in default for a period of more than ten days in an amount not to exceed five percent of each installment or

Five Dollars, whichever is less, or, in lieu thereof, interest after maturity on each such installment not to exceed the highest lawful contract rate.

\* \* \* \* \* \*

6.

| Cash Price (Including Sales Tax) | $1400 .ºº | Total Insurance | $ 50.65 |
|---|---|---|---|
| Official fees $ 56 ºº Total | $1456 ºº | Amount Financed | $1206.65 |
| Cash Down Payment | $300.ºº | FINANCE CHARGE | $248.75 |
| Trade-In Credit | $ — º — | Total of Payments | $1455.40 |
| Total Down Payment | $300.00 | Deferred payment price | $1755.40 |
| Unpaid Balance of Cash Price | $1156.00 | ANNUAL PERCENTAGE RATE | $26.75 |

two or more types of charges, a description of the amount of each type.

12 CFR § 226.4(b) states:

*Itemized charges excludable.* If itemized and disclosed to the customer, any charges of the following types need not be included in the finance charge:

(1) Fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction.

(2) The premium payable for any insurance in lieu of perfecting any security interest otherwise required by the creditor in connection with the transaction, if the premium does not exceed the fees and charges described in paragraph (b)(1) of this section which would otherwise be payable.

*(3) Taxes not included in the cash price.*

(4) License, certificate of title, and registration fees imposed by law.

(Emphasis added.) "Cash price" and "official fees" are defined by the TCCC, Tex.Civ. Stat.Ann. art. 5069–7.01(f) & (g) as follows:

"Cash Price" means the price stated in a retail installment contract for which the seller would have sold to the buyer and the buyer would have bought from the seller, the motor vehicle and other goods and services which are the subject matter of such contract if such sale had been a sale for cash. *The cash price may include any taxes* and charges for delivering, servicing, repairing, altering or improving the motor vehicle, or for installa-

tion of the motor vehicle or of goods to the motor vehicle, and charges for accessories and goods related to or used with the motor vehicle, if such charges are made to both cash and credit buyers alike and may include any of the charges described in Subsections (ii) and (iii) of Section (g) of this Article if they are not separately itemized on the contract. (Emphasis added.)

"Official Fees" means the amount of the fees prescribed by law for filing, recording or otherwise perfecting and, in addition, for releasing or satisfying a retained title, lien or other security interest created in connection with a retail installment transaction.[7]

■ The District Court inferred from § 226.4(b)(3) that taxes must be included either in the cash price, as TCCC Art. 5069–7.01(f) suggests, or be listed as a finance charge. We are mindful of the confusion potentially created when taxes, which are imposed regardless of whether or not credit is extended, are listed as finance charges and how, as Chapman urges, this goes against the policy of TILA to make installment sales contracts more easily understood by consumers. Yet, this is what the regulation implies, and this is how we have interpreted it in the past. *Grant v. Imperial Motors,* 539 F.2d 506 (5th Cir. 1976); *Meyers v. Clearview Dodge,* 539 F.2d 511 (5th Cir. 1976), *cert. denied,* 431 U.S. 929, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977) (companion cases in which license, certificate of title, and registration fees, if not itemized, were required to be included in computation of finance charge, as required by 12 CFR

---

**7.** Article 5069–7.01(g) has since been amended and now gives a definition of "Itemized Charges" which includes what were heretofore defined as "Official Fees," as well as taxes:

(g) "Itemized Charges" however denominated or expressed means those amounts, if any, included in the contract but not included in the cash price for charges made to the buyer for:

(i) any registration, certificate of title, and license fees;

(ii) any taxes;

(iii) any other fees or charges that are set or prescribed by law, that are not more than

the amounts allowed by law, and that are connected with the sale or inspection of a motor vehicle; and

(iv) any charges permitted by Article 7.06 for insurance, service contracts, or warranties permitted by Article 7.06.

Tex.Rev.Civ.Stat. art. 5069–7.01 (Supp.1979). We do not however, take this to mean that "Official Fees" now include taxes under Texas law. It is only that "Official Fees" and taxes both may be categorized as "Itemized Charges."

§ 226.4(b)(4)).[8] Any changes in the regulation are not for us, but for the Federal Reserve Board to make. We agree with the District Court's interpretation of § 226.-4(b)(3).

Of course, in this case, where the contract form specifically listed the cash price as including sales tax, it was misleading to list the sales tax anywhere other than in that space, even as a finance charge or other charge. Notwithstanding this fact, Chapman argues that there has been no violation of § 226.4(b)(3) because there were no official fees imposed in this transaction. Therefore, there was no obligation under the regulation to put any figure in the space marked "official fees." Thus, Chapman merely placed the tax figure in a blank in which it was not required that any figure be placed. He argues that this is not specifically prohibited by Regulation Z. All the regulation prohibits is the *failure* to disclose certain figures. To us, this convoluted argument makes as much sense as the protestations of a small child who is punished despite the fact that his parents did not tell him he should not put the cat in the washing machine.

We reiterate that the purpose of TILA is to "assure a meaningful disclosure of credit terms," 15 U.S.C.A. § 1601, and that Regulation Z, § 226.6(a), requires that disclosures be made clearly, conspicuously and in meaningful sequence. To place the tax figure in the wrong space when another space is specifically provided is not a clear disclosure in a meaningful sequence. And when the form states the sales tax is included in the figure stated, but in fact it is not, it is, furthermore, misleading. A misleading disclosure is as much a violation of TILA as a failure to disclose at all. *Goldman v. First National Bank of Chicago*, 532

F.2d 10, 18 (7th Cir. 1976); *Houston v. Atlanta Federal Savings and Loan, supra*, 414 F.Supp. at 856; *see Pedro v. Pacific Plan of California*, 393 F.Supp. 315, 321 (N.D.Cal.1975).[9]

Because this disclosure is misleading, and because it contradicts the definition of "official fees," which under Texas law do not include sales taxes, it is also in violation of TCCC, Tex.Civ.Stat.Ann. art. 5069–7.-02(6)(e) which states:

> (6) The retail installment contract shall specifically set out the following items:
>
> *   *   *   *   *   *
>
> (e) The aggregate amount of official fees, if a separate identified charge is made therefor;

We affirm the District Court's holding to this effect.[10]

## V. Disclosure Of Required Insurance

Chapman's final assertion of error concerns the District Court's finding of a violation of Tex.Civ.Stat.Ann. art. 5069–7.-06(3), which provides that:

> When insurance is required in connection with such a contract or agreement made under this Chapter, the seller or holder shall furnish the borrower a statement which shall clearly and conspicuously state that insurance is requested or required in connection with the contract, and that the buyer shall have the option of furnishing the required insurance either through existing policies of insurance owned or controlled by him or of procuring and furnishing equivalent insurance coverages through any insurance company authorized to transact business in Texas.
>
> *   *   *   *   *   *

---

**8.** Another possibility is that taxes may be included as "other charges" if financing is extended. *See* F.R.B. Letter of August 9, 1972, No. 623, CCH CCG ¶ 30,872, *quoted in Meyers v. Clearview Dodge, supra*, 539 F.2d at 519, n.18; *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, at 1099 (5th Cir. 1979).

**9.** Our conclusion is also supported indirectly by the language of 12 CFR § 226.6(c) which pro-

hibits the disclosure of additional information in a "misleading" manner.

**10.** A Texas Court of Civil Appeals has ruled the same way concerning the very same Chapman Motor sales contract form. *Chapman v. Miller*, 575 S.W.2d 581, 584 (Tex.Civ.App.1978) (writ ref'd n. r. e.).

Although references to insurance were made on the front side of the document, the fact that insurance actually was required under the contract was stated on the back as Condition No. 11:

> Buyer agrees to keep said motor vehicle insured in Seller's favor during the life of this obligation. If Buyer fails to do so, Seller may hold Buyer in default under this contract, or if any insurance included in the agreement is cancelled or expires, or cannot be obtained because the included cost is insufficient or otherwise, Seller may as Buyer's true and lawful attorney-in-fact, and its option, purchase insurance protecting Buyer and Seller, or either, and apply thereto the included cost or any premium refund received by Seller. Buyer shall repay Seller the additional cost of such insurance together with interest at the highest lawful contract rate, in equal installments, over the remaining term, concurrent with remaining installments. If the insurance is cancelled, adjusted or terminated for any reason, the refund for unearned insurance premiums received shall be credited to the final maturing installments.

This provision was in type the same size as all the rest of the type on that side of the page.

The TCCC does not contain a definition of "conspicuous," but the Texas Uniform Commercial Code, Tex.Code Ann. § 1.201(10) (1968) defines the term:

> "Conspicuous": A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: Non-Negotiable Bill of Lading) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous". Whether a term or clause is "conspicuous" or not is for decision by the court.

We agree with the District Court's adoption of this definition for purposes of the TCCC and its finding that Condition No. 11 was not conspicuous on the contract form.[11]

We therefore affirm the District Court opinion and remand for a determination of the Appellee's rights to additional attorney's fees incurred through prosecution of this appeal, in accordance with 15 U.S.C.A. § 1640(a)(2). *Thomas v. Myers-Dickson Furniture Co., supra*, 479 F.2d at 748.

AFFIRMED and REMANDED.

---

11. In addition, we note that the Chapman Motor Sales form further violated Art. 5069–7.-06(3) by failing to disclose that the customer had the option of furnishing his own insurance.