619 F.2d 632
 Oscar VILLANUEVA, James Malsi, and Ben Green, Jr.,
Individually and as representative of all persons
similarly situated, Plaintiffs-Appellants,
v.
MOTOR TOWN, INC., Wood Acceptance Corporation, and Deluxe
Motors Inc., Defendants-Appellees.
 Nos. 79-1271, 79-1295 and 79-1337.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 7, 1979.
Decided April 7, 1980.
 
 1
 James O. Latturner, Deputy Director, Legal Assistance Foundation, Chicago, Ill., for plaintiffs-appellants.
 
 
 2
 Robert A. Filpi, Chicago, Ill., for defendants-appellees.
 
 
 3
 Before FAIRCHILD, CUDAHY, Circuit Judges, and DUMBAULD, Senior District Judge.*
 
 
 4
 DUMBAULD, Senior District Judge.
 
 
 5
 The three cases before us arise under the "truth in lending" act of May 29, 1968, 82 Stat. 146, 15 U.S.C. § 1601 et seq. The statute's declaration of purpose shows that Congress aimed at assuring "a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." To accomplish this purpose creditors are required to make certain disclosures, among the most important of which are the dollar cost of the finance charge exacted by the lender and the annual percentage rate applicable to the loan. Mirabal v. GMAC, 537 F.2d 871, 874-75 (C.A. 7, 1976).
 
 
 6
 Each plaintiff purchased a used car, and entered into a financing contract requiring that the first installment payment after the down payment was to be paid four days after execution of the contract, rather than a whole week after the date of purchase. The lenders' computations were based on weekly installments and hence are admittedly erroneous. The contract with plaintiff Green showed annual percentage rate of 30.09 percent, whereas the correctly calculated annual percentage rate was 30.75 percent.[1] The finance charge disclosed was $169.44, and the correct amount was $167.68. On December 2, 1976, Green's account was credited with $1.76, and he was advised that the proper annual percentage rate was 30.48 percent and the finance charge $167.68.
 
 
 7
 The District Court granted defendants' motions for summary judgment, holding that: (1) the matter is de minimis and an abuse of the purpose of the "truth in lending act"; (2) that the defendants are relieved of liability by the adjustment defense recognized in 15 U.S.C. § 1640(b); (3) motion for class action is denied; and (4) pendent jurisdiction claims under Illinois law are dismissed.[2] We consider items (1) and (2), and reverse.
 
 
 8
 With regard to the proclaimed policy of the legislation, to encourage comparison shopping among finance companies by purchasers of used cars and other potential debtors, it is true that it is somewhat ludicrous to picture a shrewd borrower diverting his trade to a competing lender by reason of an offer of 30.09 percent interest rather than 30.48 or 30.81, resulting in a savings of $1.76. The basic reform was doubtless to direct the attention of borrowers to the high annual rate which misleading advertisements proclaiming lower monthly rates of interest sought to conceal, and to emphasize substantial differences in financing charges between the terms offered by reputable lenders and those exacted by outright loan sharks.
 
 
 9
 Nevertheless courts are not free to disregard the specific provisions which are spelled out in a statute as the means of effectuating its proclaimed policy merely because such means appear to be ineffective or because the court could devise a less burdensome or more effective means of effectuating the proclaimed policy if the court were vested with authority to legislate. In the often-quoted words of Learned Hand "the notion that the 'policy of a statute' does not inhere as much in its limitations as in its affirmations, is untenable." Borella v. Borden Co., 145 F.2d 63, 65 (C.C.A. 2, 1944) He also reminded us that "It is always a dangerous business to fill in the text of a statute from its purposes . . . ." Harris v. C. I. R., 178 F.2d 861, 864 (C.A. 2, 1949).
 
 
 10
 The particular provisions of a statute, as well as its general policy pronouncements, must be heeded by the courts when interpreting and applying its terms. 15 U.S.C. § 1606 provides the method of determining annual percentage rate, and authorizes the Federal Reserve Board to authorize reasonable tolerances and use of any other method "which materially simplifies computation while retaining reasonable accuracy" as compared with the rate determined in accordance with 15 U.S.C. § 1606(a)(1)(A).
 
 
 11
 Congress having expressly prescribed detailed procedures for calculating the items required by 15 U.S.C. § 1631(a) to be disclosed to the debtor, the District Court erred in holding that the actions brought by appellants constituted "an abuse of the purpose of the Truth-in-Lending Act."
 
 
 12
 For cognate reasons it was also error to hold that the actions were precluded by the de minimis rule. Congress provided, in addition to criminal penalties (15 U.S.C. § 1611) and administrative enforcement (15 U.S.C. § 1607), that a civil action may be brought in a United States District Court against a creditor failing to disclose "any information required . . . to be disclosed" by the person to whom it should have been disclosed. In such action, regardless of any actual damages suffered by the plaintiff, "twice the amount of the finance charge in connection with the transaction" may be recovered, subject to a minimum of $100 and a maximum of $1,000 (together with court costs and a reasonable attorney's fee), 15 U.S.C. § 1640(a).
 
 
 13
 In view of these specific provisions for liability, the courts are not free to dismiss actions brought thereunder as trifles demeaning to the dignity of the federal judiciary. If it is thought that such litigation converts the District Court into a small claims tribunal, one remedy used in some districts is to refer those cases to a Magistrate pursuant to 28 U.S.C. § 636.
 
 
 14
 The District Court also erred in holding that appellees had established a § 1640(b) defense.[3] Upon discovery of error, appellees notified Green that the annual percentage rate should have been 30.48 instead of 30.09, electing to raise the rate so as to conform to the corrected dollar amount of the finance charge.
 
 
 15
 However, the debtor was entitled to a reduction in the dollar amount of finance charge to correspond to the disclosed annual percentage rate of 30.09 percent.
 
 
 16
 This result is required by § 1640(b). As explained by Judge Sprecher in Mirabal v. GMAC, 537 F.2d 871, 879 n.16 (C.A. 7, 1976):
 
 
 17
 Section 1640(b) lays the burden of an error on the creditors. To comply with the section the creditor must make adjustments in the account so that the obligor pays a finance charge which is neither higher than the amount of the finance charge in the contract, nor higher than the finance charge which would be applicable to the annual percentage rate disclosed in the contract. Thus, if the creditor makes a mistake, he must bear the burden of the mistake and adjust whatever terms necessary downward so that all the terms of the contract correspond.
 
 
 18
 This is the plain meaning of the section. Congress did not say that if the creditor "corrected his error" within 15 days he would avoid liability. Congress told the creditors to make "whatever adjustments in the appropriate account are necessary to insure that the person will not be required to pay a finance charge in excess of the amount or percentage rate actually disclosed."
 
 
 19
 Appellees (Brief, p. 23) invite us to reconsider this interpretation, which they characterize as dictum. Their argument about the disjunctive meaning of "or" brings to mind the debate over the meaning of "vel" in Chapter 39 of King John's Magna Carta.[4]
 
 
 20
 We are satisfied that Mirabal correctly interpreted the plain meaning of the statute. It is true that "or" expresses an "alternative," but an alternative for the advantage of the borrower, not the lender. The lender who has failed to make proper disclosure is estopped to deny the borrower the benefit of a charge no higher than either the amount actually disclosed or an amount calculated in accordance with the percentage rate actually disclosed.
 
 
 21
 Since admittedly the appellees here did not allow Green the most favorable (to him) alternative, they have not established a § 1640(b) defense.
 
 
 22
 Accordingly, the judgment of the District Court is reversed, and the cause remanded for further proceedings in accordance with this opinion.
 
 
 
 *
 The Honorable Edward Dumbauld, Senior District Judge of the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 This is the figure stated by the District Court. Appellants' brief (p. 6) gives a rate of 30.81 percent. Appellees' brief (p. 4) gives 30.48 percent
 
 
 [2]
 Items (3) and (4) were reserved and not discussed in the District Court's memorandum opinion of January 19, 1979, and were not fully litigated below, although covered by the docket entry and order dated February 16, 1979, and date-stamped February 21, 1979. We do not pass upon these items but leave them open upon remand to the District Court
 
 
 [3]
 15 U.S.C. § 1640(b) provides:
 A creditor has no liability under this section if within fifteen days after discovering an error, and prior to the institution of an action under this section or the receipt of written notice of the error, the creditor notifies the person concerned of the error and makes whatever adjustments in the appropriate account are necessary to insure that the person will not be required to pay a charge in excess of the amount or percentage rate actually disclosed.
 
 
 [4]
 ". . . nec super eum mittemus, nisi par legale judicium parium suorum vel per legem terrae." See William S. McKechnie, Magna Carta (2nd ed. 1914) 381-82