Daniel KURZ, Plaintiff,

v.

**CHASE MANHATTAN BANK, Defendant.**

No. 00 CIV.1573 CM.

United States District Court, S.D. New York.

July 21, 2003.

AMENDED DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

Plaintiff, an attorney admitted to practice in this District, filed a six count complaint, alleging defendant had violated the Truth in Lending Act (TILA), 15 U.S.C. § 1666, on numerous occasions in connection with credit card billing. On February 16, 2001 this Court granted defendant's motion for dismissal or summary judgment on all counts. The Third Count was dismissed without prejudice, so plaintiff could affirmatively plead that defendant had failed to respond to his billing inquiries in the manner required by the Fair Credit Billing Act and Regulation Z (12 C.F.R. § 226.13).

Plaintiff subsequently filed a Third Amended Complaint. Defendant, after answering, denying the complaint and asserting affirmative defenses and counterclaims alleging deceit, breach of contract and breach of the implied covenant of good faith and fair dealing, conversion and unjust enrichment, renewed their motion for summary judgment.

**Facts Pertinent to the Motion**

Plaintiff holds an open-ended credit card account with defendant bank. In December 1998 plaintiff commenced a campaign of billing error complaints against defendant. Plaintiff, a practiced litigator in Truth in Lending Act matters, scrutinized his bills for any discrepancies between the receipts that he or members of his family had signed when making various purchases on his credit card and the detail relating to those purchases that appeared on his monthly billing statements. Not surprisingly he found differences. These took the form of differences in merchant name (perhaps a formal corporate name as distinct from the name of the store) or a

posting date that was one or two days later than the date of the actual purchase.

One example of such a discrepancy disputed by plaintiff arose when he purchased air tickets from a travel agent. Plaintiff freely admits that he signed a blank sales slip authorizing payment of $1,910 to the travel agent. Despite using the tickets and being billed only once for them, plaintiff disputed the payment when it was credited to "Picasso Travel" on his account. Having informed defendant that he did not recognize the name of the merchant, he then withheld payment for some seven months. When the bank sent him a copy of the sales slip with his signature recorded on it plaintiff reluctantly paid the charge, although he still complained that the issue regarding the correct name of the travel agent had not been resolved. In Plaintiff's Counter Statement of Facts Pursuant to Local Rule 56.1(b) he seeks a total of $1,600 in penalties for defendant's failure to resolve this billing inquiry in a timely manner. (Counter Statement of Material Facts at 12).

From December 1998 until this case was filed, plaintiff bombarded defendant with letters detailing billing discrepancies. From December 1998 to November 2001, plaintiff sent defendant a total of thirty-two such letters. Sometimes he included complaints about several different discrepancies in one letter. Sometimes he enclosed payment along with his letters of complaint. Defendant asked that plaintiff stop confusing its representatives by making multiple claims in single letters and by enclosing payments along with claims, but plaintiff questioned defendant's right to make such requests and continued to issue confusing letters.

Plaintiff does not claim that the technical discrepancies he uncovered were prompted by a good faith belief that he had not incurred the charges in question. Rather, he asserts that TILA requires creditors to respond to billing inquiries within a specified time and in a specified way and authorizes actual and/or statutory damages against a creditor who fails to do so, regardless of the bona fides of the inquiry. When pressed in deposition for a justification for his continual complaints, plaintiff said only that if he did not question the validity of the charge within the time period set by TILA he might ultimately become responsible for a double billing. (EBT at 295)..

## Discussion

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. United States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir.1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material in light of the

substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### The Truth in Lending Act (TILA)

 The Truth in Lending Act, originally enacted in 1968, was the first federal consumer protection law. It is a remedial statute and as such it is intended to be construed liberally in favor of the consumer. TILA is designed to promote the provision of accurate and understandable information concerning credit agreements signed by members of the public. Congress also sought to force creditors to be more responsive to their customers, both by displaying relevant information clearly and by ensuring that they would respond promptly to complaints regarding billing errors.

It was for this reason that Congress enacted 15 U.S.C. § 1666, which clearly sets out the required procedure to be followed if the obligor wishes to query his bill. Under this section the obligor is required to:

(1) set out details of his name and account;

(2) indicate his belief that the statement contains a billing error and the amount of the alleged billing error; and

(3) set out his reasons for believing that there has been a billing error.

Having received such an inquiry, the law requires the creditor to:

(A) send a written acknowledgment of the notice to the obligor not later than thirty days after its receipt, unless the action required in subparagraph (B) is taken within such thirty-day period, and

(B) not later than two complete billing cycles of the creditor (in no event later than ninety days) after the receipt of the notice and prior to taking any action to collect the amount, or any part thereof, indicated by the obligor under paragraph (2) either-

(i) make appropriate correction in the account of the obligor, including the crediting of any such finance charges on amounts erroneously billed, and transmit to the obligor a notification of such corrections and the creditor's explanation of any change in the amount indicated by the obligor under paragraph (2) and, if any such change is made and the obligor so requests, copies of documentary evidence of the obligor's indebtedness; or

(ii) send a written explanation or clarification to the obligor, after having conducted an investigation, setting forth to the extent applicable the reasons why the creditor believes the account of the obligor was correctly shown in the statement and, upon request of the obligor, provide copies of documentary evidence .....

15 U.S.C. § 1666 (2003).

Section 1640 of the statute governs the award of damages for TILA violations:

. . . any creditor who fails to comply with any requirement imposed under this chapter [ 15 U.S.C. § § 1631 et seq.] . . . is liable to such a person in an amount equal to the sum of -----

(1) any actual damage sustained by such person as a result of the failure;

(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction.

Section 1666(e) specifically governs the noncompliance of the creditor with the specified procedure for correcting billing errors:

Any creditor who fails to comply with the requirements of this section or section 162 (15 U.S.C. § 1666a) forfeits any right to collect from the obligor the amount indicated by the obligor ... and any finance charges thereon, except that the amount required to be forfeited under this subsection may not exceed $50.

■ Courts have held that TILA, being a remedial statute, must be strictly construed. "Once the court finds a violation no matter how technical it has no discretion with respect to the imposition of liability." *Grant v. Imperial Motors*, 539 F.2d 506, 510 (5th Cir.1976). *See also N.C. Freed Co., Inc. v. Board of Governors of Federal Reserve System*, 473 F.2d 1210, 1214 (2d Cir.1973) *cert. denied*, 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973) (TILA is remedial in nature, designed by Congress to remedy predatory creditor practices, and must be construed in a liberal fashion); *Trombly v. State Credit Adjustment Bureau, Inc.*, 1984 U.S. Dist. Lexis 24874 (D.Conn. Sept. 17, 1984) (plaintiffs need only establish one example of non-compliance in order to recover under any provision of 15 § U.S.C. 1601 et. seq.). Courts have applied the same liberal construction when considering the awarding of actual damages. In *Villanueva v. Motor Town Inc.*, 619 F.2d 632 (7th Cir.1980) plaintiff's action for $1.76 in actual damages was dismissed as *de minimis* by the district court but this decision was reversed on appeal. The Circuit Court held that the courts are not free to dismiss these actions as trifles, even if the actual financial damage claimed is miniscule. *Id.See also Grant v. Imperial Motors*, 539 F.2d at 510.

■ Moreover, it is not necessary for a TILA plaintiff to establish that he incurred actual damages as a result of a technical violation of TILA in order to seek statutory damages. *See e.g., Clausen v. Beneficial Finance Co.*, 423 F.Supp. 985, 990 (N.D.Cal.1976) (holding that class action plaintiffs could receive statutory damages even though they had made no allegation of actual damages); *see also, In re Pittman*, 165 B.R. 586 (Bkrtcy.D. Md.1994) (holding that statutory damages were appropriate even where plaintiff debtor did not suffer actual damages following a technical violation of TILA).

■ The statutory language and cases interpreting it seem clear enough: if the court finds that defendant violated 15 U.S.C. § 1666(a)(3)(A) and (B) by not replying to Kurz's allegations of a billing error within the required period and by not making the required corrections, then defendant is liable for the statutory damages described in 15 U.S.C. § 1640(a)(2)(A)(i) and § 1666(c). Plaintiff alleges that written notice of the alleged billing errors, with full account details, were provided to Chase within sixty days of their alleged occurrence. He further alleges that his inquiries were not responded to as required by TILA, in that, *inter alia*, he did not receive written response within the time period designated by TILA, a complete investigation was not undertaken and he was not ultimately provided with a full written account of monies he still owed. He offers evidence to support those contentions in response to defendants' motion for summary judgment.

Defendants do not seem to dispute that Kurz complained within the requisite time period. But they allege that his complaints do not amount to bona fide complaints regarding billing errors, because of the nature of the complaints, the confusing way in which they were written and because of plaintiff's alleged lack of good faith. TILA does not explicitly require that the obligor's complaint arise out of a good faith belief that he does not owe the amount specified. Indeed, when describing what constitutes a billing error the statute specifies that "(a) reflection on a

statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof." represents a billing error. 15 U.S.C. § 1666(b)(2).

It is true that the Supreme Court, discussing TILA's statutory scheme in *American Express Co. v. Koerner*, 452 U.S. 233, 235—37, 101 S.Ct. 2281, 68 L.Ed.2d 803 (1981), stated in dicta and in passing that if a consumer *believed* that his statement contained a billing error he could send a letter pursuant to 15 U.S.C. § 1666(a) disputing the bill. But beyond this, there is little evidence of the courts inquiring as to the good faith of the plaintiff. Rather, courts actually considering TILA claims, including district courts within the Second Circuit, have held defendants liable, even for technical violations of the statute. *See Smith v. Chapman*, 614 F.2d 968, 971 (5th Cir.1980) (holding that it is well-settled that an objective standard should be used in determining a violation of TILA, that it is not necessary that plaintiff-consumer actually have been deceived for there to be a violation of TILA); *Grant v. Imperial Motors*, 539 F.2d 506 (5th Cir.1976) (a technical violation of TILA is a basis for civil liability); *Villanueva v. Motor Town Inc.*, 619 F.2d 632 (7th Cir.1980) (discussed above); *Lopez v. Orlor*, 176 F.R.D. 35, 41 (D.Conn.1997) (granting summary judgment to plaintiff for technical violation of TILA, citing *Smith v. Chapman* for the proposition that it is not necessary that the plaintiff-consumer actually have been deceived for there to be a violation of TILA); *see also Lundquist v. Security Pacific Automotive Financial Services Corp.*, 1992 WL 475651 (D.Conn. June 9, 1992) (noting that technical violations of the disclosure provisions of TILA will support an award of statutory damages); *Frazee v. Seaview Toyota Pontiac, Inc.*, 695 F.Supp. 1406, 1408 (D.Conn.1988) (same); *Trombly v. State Credit Adjustment Bureau, Inc.*, 1984 U.S. Dist. Lexis 24874 (D.Conn. Sept.

17, 1984) (plaintiffs need only establish one example of non-compliance in order to recover under any provision of 15 § U.S.C. 1601 et. seq.).

Thus, despite the Supreme Court's use of the word "believe" in *Koerner,* and those cases holding that a technical infraction amounting to the value of only a few cents should be dismissed, there does not appear to be any basis for avoiding liability, and statutory damages, if in fact Chase failed to comply with TILA's deadlines.

Defendants describe this as a "bad faith strike suit" and ask that the court dismiss it as such. This I cannot do.

The cases on which defendant relies are not persuasive. The holdings are not directly relevant to the issue before me; the decisions are by District Courts outside this Circuit; and the opinions are both at least thirty years old. *See Andrucci v. Gimbel,* 365 F.Supp. 1240 (W.D.Pa.1973), *aff'd* 505 F.2d 729 (3d Cir.1974) (granting summary judgment for defendant on TILA claim despite their failure to obtain specific forms required under 12 CFR § 226.6(k) prior to the deadline of July 1, 1964, where defendant made reasonable bona fide efforts to obtain the forms prior to the deadline, and where it used transitional forms that provided plaintiffs with full disclosure); *Shields v. Valley National Bank of Arizona,* 56 F.R.D. 448, 451 (D.Ariz.1971) (denying plaintiff-consumer's motion to certify a class action under TILA for failure to satisfy the requirements of Rule 23).

The courts in *Grant* and *Villaneuva,* supra., which involved the sort of technical nit-picking that Kurz relies on in his dealings with Chase, considered and rejected "bad faith" defenses similar to the one propounded by defendant here. District Courts in this Circuit have adopted the same rationale—finding that because TILA is a remedial statute, technical violations can form the basis for statutory damages. *See Lopez, Lundquist, Frazee,* su-

pra. I conclude that there is no basis to dismiss this case because it is a "bad faith strike suit," and indeed that, no matter what I may think about Mr. Kurz, I am not at liberty to do so.

■ However, in addition to statutory damages, Kurz seeks actual damages. For example, in his Memorandum of Law in Opposition to the Defendant's Motion for Summary Judgment, plaintiff requests actual damages to compensate for the time and effort he expended in supposedly sorting out the account. (Memorandum of Law at 5) Here, Chase may be on firmer ground with its "bad faith" defense.

TILA § 1640 allows for "any actual damages" which the plaintiff has incurred as a result of defendant's violations. The courts have at times been liberal with regard to what could constitute "actual damages;" some courts have even gone so far as to allow "actual damages" for mental anguish and distress where a defendant's violation of TILA caused considerable embarrassment or humiliation. *See generally, Burnstein v. Saks*, 208 F.Supp.2d 765 (E.D.Mich.2002) (discussing the possibility of damages under TILA for severe emotional distress); *see also, Casella v. Equifax Credit Information Servs.*, 56 F.3d 469

(2d Cir.1995) (holding that suffering and stress could be proper issues for actual damages prompted by violations of the analogous Fair Credit Reporting Act, although in that case plaintiff had failed to meet his burden of proving causation). The key, of course, is linking any claimed damage to the defendant's TILA violation and not to some other cause. The element of causation raises a question of fact that precludes summary judgment in either party's favor.

If, as Chase claims, Kurz has filed his numerous complaints in bad faith and simply to harass the Bank—a determination that is rarely if ever appropriate to make on a summary judgment motion—it would certainly be within the trier of fact's discretion to conclude that Kurz and Kurz alone caused himself to expend the "time and effort" needed to "redress" these so-called violations and decline to compensate him for the time and effort he expended in making those claims. Chase certainly ought to have the opportunity to convince the trier of fact, in any instance in which it is proved to be in technical violation of the statute, that Kurz suffered no actual damages. And, if the trier of fact (which in this case would appear to be the Court [1])

1. Claims for actual damages clearly fall into the realm of legal relief; "money damages are, of course, the classic form of legal relief." *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (internal citations omitted). Courts are divided as to whether a plaintiff seeking statutory damages has a right to a jury trial. The disagreement concerns whether an award of statutory damages is legal or equitable in nature. (*See Time Warner Cable of N.Y. City v. Negovan*, 2001 WL 1182843 (E.D.N.Y. July 30, 2001) for a catalogue of cases and rulings on this issue). If the award of statutory damages is seen as representing equitable relief then "(i)t should go without saying that no right to a jury attaches to claims for equitable relief." *CSC Holdings Inc. v. Westchester Terrace at Crisfield Condo.*, 235 F.Supp.2d 243, 264

(S.D.N.Y.2002). *See also Reprosystem B.V. v. SCM*, 727 F.2d 257 (2d. Cir.1984) (holding that damages based in restitution are premised on the equitable principle that a party should not be allowed to enrich himself at the expense of another). But other courts have concluded that statutory damages under a different Federal statute represent a remedy aimed at punishment of individuals and that if the intention is to punish the wrongdoer then statutory damages represent legal relief and the right to a jury trial attaches *see Time Warner Cable v. Kline*, 2000 WL 1863763 (S.D.N.Y. Dec. 12, 2000); *see also Feltner v. Columbia Pictures*, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) (holding that it was reversible error for a district court to refuse a jury trial on the question of statutory damages in a copyright case).

concludes that Kurz was acting in bad faith or for the purpose of harassment, it might well be appropriate for Chase, or even this Court, to refer him to the Grievance Committee of this Court, the Ninth Judicial District Disciplinary Committee, or perhaps even to the United States Attorney or the Attorney General of the State of New York. But these matters must abide the trial.

One thing is quite clear: Kurz is not eligible to recover attorneys' fees, even if he prevails, because an attorney pro se does not qualify for such reimbursement in this Circuit, *Belmont v. Associates Nat'l Bank (Del.),* 119 F.Supp.2d 149, 166 (E.D.N.Y.2000).

However, Kurz has failed to request a jury trial in a timely manner (i.e., within ten days after the filing of the last pleading on the issue—in this case, his reply to Chase's counterclaims). The failure of a party to serve and file a demand for trial by jury constitutes a waiver of that right. Fed.R.Civ.P. 38(d). Chase has not served a demand for a jury trial, either and thus has also waived its right to a jury trial on any issue in this action. Accordingly, the case is being tried to the Court.