Thomas **WILLIS**, Plaintiff,

v.

**AMERICAN NATIONAL STORES, d/b/a Myers-Dickson Furniture Company, Defendant.**

**Civ. A. No. 15962.**

United States District Court, N. D. Georgia, Atlanta Division.

Sept. 21, 1972.

---

.

Nathan M. Crystal of Nall, Miller & Cadenhead, Atlanta, Ga., for plaintiff.

Arnold, Golden & Gregory, Atlanta, Ga., for defendant.

## ORDER

MOYE, District Judge.

On December 10, 1970, Thomas Willis purchased a television and antenna from the Myers-Dickson Furniture Company of Atlanta, Georgia. Rather than paying cash, Mr. Willis opened a revolving charge account with Myers-Dickson and charged his purchase. After making a number of payments on his account, Mr. Willis brought this suit alleging Myers-Dickson failed to make certain disclosures required by the Consumer Credit Protection Act, 15 U.S.C.A. § 1601, et

seq. (Supp.1972) [hereinafter referred to by its popular name, the Truth in Lending Act, or the Act]. The case is presently before the Court on plaintiff's motion for summary judgment.

Mr. Willis's revolving charge account is referred to by the Truth in Lending Act as an "open end credit plan."[1] The Act requires creditors extending open end credit plans to make various disclosure statements before an account may be opened. The purpose of the Act is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.[2]

Prior to opening Mr. Willis's account, Myers-Dickson gave him a paper entitled "Explanation of Your Credit Plan". It contained a number of disclosures which were intended to comply with the requirements of the Act. Mr. Willis contends the disclosure concerning the possibility of Myers-Dickson retaining a security interest in his property failed to comply with the requirements of the Act. The Act requires:

"(a) Before opening any account under an open end consumer credit plan, the creditor shall disclose to the person to whom credit is to be extended each of the following items, to the extent applicable:

\* \* \* \* \* \*

"(7) *The conditions under which* the creditor may retain or acquire any security interest in any property to secure the payment of any credit extended under the plan, and a description of the interest or interests which

may be so retained or acquired." [15 U.S.C.A. § 1637(a)(7) (Supp.1972) (emphasis added)]

Myers-Dickson's "Explanation of Your Credit Plan" contained the following paragraph:

"To secure payment of any credit extended on your account, the seller may, at his option, retain a security interest in the merchandise at the time of purchase. This security interest will be retained pursuant to the Uniform Commercial Code, or similar State law, with title to the merchandise not passing to you until all sums are fully paid."

Mr. Willis contends Myers-Dickson's disclosure statement is inadequate because it merely stated "the seller may, at his option, retain a security interest in the merchandise at the time of purchase" rather than disclosing "the conditions under which" the seller would retain a security interest.

In rebuttal to Mr. Willis's contentions, Myers-Dickson alleges that the disclosure in the "Explanation of Your Credit Plan" is sufficient to comply with the requirements of the Act—especially when coupled with another, more specific, disclosure statement[3] in the sales agreement executed by Mr. Willis at the time he bought his television and antenna.

The Court notes this is not the first case in which creditors have attempted to narrow the application of the disclosures required by § 1637 of the Truth in Lending Act.[4] Section 1637 clearly states the items must be disclosed *"before opening any account;"*

---

1. 15 U.S.C.A. § 1602(i) (Supp.1972).

2. 15 U.S.C.A. § 1601 (Supp.1972).

3. The reverse side of the sales agreement signed by Mr. Willis contained the following paragraph:
"Pursuant to the Uniform Commercial Code, Seller retains a security interest in the property (described more fully on the reverse side) purchased by Buyer together with all personal property which the Buyer received from

Seller in exchange for any personal property herein set forth or described, and where permissible by law in any goods which the Buyer has heretofore or may hereafter purchase from Seller. Title to such property in which a security interest is retained shall not pass to Buyer until all sums due under this Agreement are fully paid in cash."

4. *See,* Ratner v. Chemical Bank New York Trust Company, 329 F.Supp. 270 (S.D. N.Y.1971).

not at the time of purchase. Furthermore, the Federal Regulation which explains the Act[5] requires the disclosures listed in 15 U.S.C. § 1367 to be made in a single written statement before the first transaction is made on any open account.[6] Therefore, Myers-Dickson cannot establish compliance with the requirements of the Act by coupling the disclosure statement on the form entitled "Explanation of Your Credit Plan" with the disclosure statement contained on the reverse side of the sales agreement. The disclosure statement made in the "Explanation of Your Credit Plan" must stand on its own footing when being evaluated for compliance with the Act.

■  Myers-Dickson's "Explanation of Your Credit Plan" states: "the seller may, at his option, retain a security interest in the merchandise at the time of purchase." The Court rules this statement insufficient to comply with the requirements of the Act. The clear and unambiguous wording of the Act requires creditors to state "the conditions under which"[7] a security interest may be retained. Mere perfunctory statements such as "the seller may, at his option, retain a security interest" are facially insufficient to comply with the above-quoted wording of the Act. Furthermore, merely stating that "the seller may, at his option, retain a security interest" frustrates the purpose of the Act because it does not sufficiently inform the consumer so he may "compare . . . various credit terms available to him."[8]

■  The Court's conclusion is bolstered by opinions stated in a staff letter [reprinted in the margin][9] from the Assistant Director of the Federal Reserve Board[10] concerning what consti-

---

5. 12 C.F.R. § 226 et seq. (1972).

6. 12 C.F.R. § 226.7(a) (1972) provides:
   "(a) *Opening new account.* Before the first transaction is made on any open end credit account, the creditor shall disclose to the customer in a single written statement, which the customer may retain, in terminology consistent with the requirements of paragraph (b) of this section, each of the following items, to the extent applicable:
   *    *    *    *    * "

7. 15 U.S.C.A. § 1637(a)(7) (Supp.1972).

8. 15 U.S.C.A. § 1601 (Supp.1972).

9. "This is in response to your request of June 19, 1970, that we review the *  *  * proper method for disclosure under § 226.7(a)(7) [¶ 3555] of security interest on open end accounts. Under the plan outlined *  *  *, the creditor of the open end credit account would like to obtain a security interest in high cost items ($300 and over). The question is how must disclosure be made at the outset of the agreement. [Bank] suggests the following language:
   "A security interest may be retained by bank in certain property purchased by use of customer's Master Charge card. The granting of such security interest will be evidenced by either a separate security agreement executed at the time of the particular sale or by the actual sales slip which will include a statement that a security interest is granted upon signing thereof in the property described. In either instance, such property will secure payment of the amount owing as the result of said sale and related FINANCE CHARGES."
   "Section 226.7(a)(7) [¶ 3555] requires disclosure of:
   "The conditions under which the creditor may retain or acquire any security interest in any property to secure the payment of any credit extended on the account, and a description or identification of the type of the interest or interest which may be so retained or acquired."
   The disclosure suggested by [Bank] does not state in any detail the conditions under which the creditor may retain a security interest in goods purchased. The intent behind this provision was to insure that the customer of the open end account would be aware of the situation in which a security interest may exist. It seems to us that the conditions should be stated more certainly, (i. e., that a security interest will be taken on items above 'x' amount) especially since no such disclosure is required on the periodic billing statement." (Excerpts from FRB Letter of September 16, 1970, No. 405, by Tynan Smith. Assistant Director.) [CCH Consumer Credit Guide ¶ 30,588]

10. Pursuant to 15 U.S.C.A. § 1607(a) (Supp.1972), the Federal Reserve Board is vested with the responsibility to en-

tutes the proper method for disclosure of a security interest on open end accounts. The excerpts from this letter make it clear that something more than illusory statements such as Myers-Dickson's are required to comply with the Act. The letter states: "the conditions should be stated with more certainty, (i. e., that a security interest will be taken on items above 'x' amount)." In the interest of preserving flexibility in business transactions, however, the Court declines to rule specifically at this time on what language constitutes adequate disclosure of the conditions under which a security interest will be retained.

Since there are no material issues of fact concerning the security interest disclosure, the Court grants summary judgment to the plaintiff based on the above legal analysis.

■ Moving to the issue of damages due Mr. Willis, the Court notes that § 1640 of the Act specifies the method for computing civil liability for failure to disclose items required by the Act. Section 1640 of the Act states:

"(a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of

"(1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and

"(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court." [15 U.S.C.A. § 1640(a) (Supp.1972)]

The Court interprets the above-quoted provision to mean that the damages recoverable shall be twice the amount of the finance charge which would have been collected in connection with the transaction had the consumer paid off his account in regular monthly installments. To base the amount of damages on the finance charges actually paid at the time of suit would discourage consumers from bringing actions until after they had paid their account in full. The full finance charge which would have been collected in connection with Mr. Willis's transaction was $142.00. Accordingly, the amount of damages recoverable under the Act from Myers-Dickson is $284.00.

Since material issues of fact remain concerning the proper amount recoverable for attorney's fees, the case will proceed to trial on that issue.

---

force the Act insofar as it applies to member banks. The status of a Federal Reserve Board letter is best explained by the following:

"This is in reply to your letter * * * requesting the Board to indicate that a * * * staff letter on Regulation Z, Truth in Lending, represents the position of the Board of Governors.

"A staff opinion represents the informed view of the particular official responding to the inquiry, who is authorized by the Board to express opinions on the particular subject. While it is possible that in some instances it might not represent the position which the Board members themselves would take if they formally considered the issue, the Board considers the present informal and flexible procedure, by which members of its staff provide opinions on regulatory provisions, an essential part of its operations.

"It is the Board's view that the public is entitled to rely on a formal staff opinion unless and until it is altered by the Board after formal consideration. *Where the issue involves a statement of legal position, it may be assumed that while the question discussed has not been presented to, nor reviewed by the Board, such view is believed by the staff to be legally sound and judicially sustainable, and would be recommended by the staff for Board adoption should the matter be presented to the Board."* (Emphasis added.) (Excerpts from FRB Letter of March 1, 1971, No. 444, by Kenneth A. Kenyon, Deputy Secretary.) [CCH Consumer Credit Guide ¶ 30,640]