Wilmer DIXON, on her own behalf and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

D. H. HOLMES COMPANY, LIMITED, Defendant-Appellee.

No. 77-1379

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Jan. 16, 1978.

Joseph W. Thomas, New Orleans, La., for plaintiffs-appellants.

Peter Frank Liberto, Nathaniel P. Phillips, Jr., New Orleans, La., for defendant-appellee.

Before THORNBERRY, RONEY and HILL, Circuit Judges.

PER CURIAM:

The judgment is affirmed for the reasons stated by the district judge from the bench in granting appellee's motion for summary judgment. *See* attached appendix.

AFFIRMED.

APPENDIX

THE COURT:

Motion for summary judgment on behalf of D. H. Holmes is granted. I see no reason to do more than render oral reasons, and I'll give them at this time. . . .

The Truth in Lending Act requires truth in lending, but it's not an act that requires sacrament in language. It does not require the use of shibboleths or other sacred terms.

It seems to be that the disclosure statement in this case, while, obviously, one could flyspeck it and improve on it from a technical standpoint does what the Truth in Lending Act contemplates, which is make clear to the borrower, in this case the buyer on an installment contract, the cost of his credit, the terms of his credit, and what happens should he fulfill his contract in a way other than by the number of installments called for.

I take separately the two defects sought to be found in the statement. The first is that in the boxes on the right-hand side of the retail installment contract the term "of the cash price" is omitted where the term "unpaid balance" is used, and this is a fatal defect. Now, I do not know whether in some instances omission of that term might not indeed be failing; but in this instance on this contract and in this case, which is all I have before me, it seems to me to be quite clear that that term, "unpaid balance," refers to the unpaid balance of the cash price. It is quite evident from context that that's what it means. Coupled with the figures used, its meaning could not be clearer; and, indeed, it seems to me that to tamper with the form and insert further language would make it less clear rather than more clear.

The form sets forth items as follows: "1. Cash price, $465.34; 2. Cash down payment, $150.00; 3. Unpaid balance—amount financed (subtract 2 from 1), $315.34."

Now, it does not require a degree in law to understand, I think, that when we subtract number 2 from number 1, cash down payment from cash price, what we have is unpaid balance of cash price and could have nothing else. I see nothing there but a substantial compliance with the requirements of the regulation; and, indeed, elsewhere it has been the uniform interpretation, both of the Courts and the Federal Reserve Board, that substantial and not sacramental compliance is what is necessary.

The other fault found in the form is that the buyer is not adequately and fully informed what will happen in the event of a

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir. 1970, 431 F.2d 409, Part I.

partial pre-payment and a full pre-payment of the contract. Here again, of course, one sentence or one line cannot be read in isolation. The contract is a monthly installment contract. It requires payments each month, 12 of them, to make the total sum due, 12 all equal in the amount of $28.35.

It is evident that unless the buyer defaults on the contract that by the time a hundred and twenty days from the date of purchase has elapsed—and that date was July 15, 1976—four payments should have been made.

Now, there are, of course, a number of possibilities of pre-payment. The buyer might come in and pre-pay before he ever makes a monthly installment payment. He might come in and pre-pay after he makes one $28.35 payment. That is approximately some time more than 30 and less than 60 days after the contract. I use those approximate dates since the contract was apparently signed on July 15th. The first installment falls due August 25th. So, there is this 40-day period from date of purchase to date of first installment. But if the buyer pre-pays before August 25th, then he has not paid anything. The second possibility is he pre-pays after he has made an August 25th payment before he's made the September 25th payment. Of course, the third possibility is he's pre-paid after he's made the September 25th and August 25th payments but before he makes the October payment but within 90 days of the contract, date of the contract.

Now, the contract says with respect to such payments, "You have the right to pay in advance the unpaid balance of this contract and obtain a partial refund of the finance charge based on the Rule of 78's." We need not pause to decide whether the Rule of 78's reference is an adequate disclosure because the regulation says it is. The question is whether "unpaid balance of this contract" is a meaningless term or a prohibited term because it is not the term of art that it is suggested. It seems to me that it is quite clear to the buyer the unpaid balance of this contract is different than the unpaid balance of the cash price, the term referred to on line 3 in the right. It means the total unpaid balance at any time, the unpaid balance of this contract, and that meaning seems to me to be quite clear, not deceptive, quite comprehensible. That unpaid balance would be whatever the total of $340.54, reduced by the number of $28.35 installments, then interest is. It might be after four months, in which case it would be $227.14. That would be the unpaid balance of this contract; and if the buyer comes in after four months and pays 227.14, then he's going to get some of that 227.14 back. He doesn't know—and I don't know—the dollar amount he'll get back. It's determined by the Rule of 78's; but that's a sufficient disclosure that he will be advised of his rights. And, indeed, I really think that there no serious quarrel can be made with that disclosure other than the question of whether "unpaid balance of this contract" is a significant or insignificant term. Now, that language is followed, however, immediately in the document by this language: First, in all caps, bold face, "90 DAY," followed in bold face, not all caps, "privilege-", and then in the normal-sized type, "If the 'amount financed' is paid in full 90 days from the day of your first billing, the total finance charge will be refunded." Now, there is no question of the adequacy of this language in terms of its declaration of the seller's purpose. If the buyer comes in and tenders, before he has ever made a payment, $340.54, the seller will keep $315.34 and give him back $25.20. What's suggested is that if, however, the buyer comes in and pays $315.34 the seller will not give him back $25.20 and, therefore, the term "refunded," the last word in this sentence, is misleading, because if, indeed, $315.00 is paid nothing will be refunded; and that, I think, is a correct reading of the language, but I don't think it is deceptive. I don't think it's deceptive to say that you will refund something if you don't intend to refund what you don't get. Here again, I have no doubt that this language

can be improved on. Seldom do I have any doubt that most of what I write can be improved on. The question is not whether something is capable of semantic improvement but whether it contains a substantial and accurate disclosure, and I think this retail installment contract does.