(627 P.2d 352)

No. 51,660

ED MARLING STORES, INC., *Appellee,* v. FOISTER and CHERYL MIRACLE, *Appellants.*

No. 52,320

ED MARLING STORES, INC., *Appellant,* v. KATHRYN RICHARDSON, *Appellee.*

Opinion filed May 1, 1981.

Opinion filed May 1, 1981.

*Rose Marino,* of Kansas Legal Services of Lawrence, and *Lowell C. Paul,* of Legal Aid Society of Topeka, for the appellants Foister and Cheryl Miracle, and the appellee Kathryn Richardson.

*Larry G. Karns,* of Glenn, Cornish, Schulteis & Hanson, Chartered, of Topeka, for the appellee/appellant, Ed Marling Stores, Inc.

Before JUSTICE HERD, presiding, SWINEHART, J., and WILLIAM M. COOK, District Judge, assigned.

SWINEHART, J.: These two appeals arise from petitions filed by Ed Marling Stores, Inc., alleging breach of conditional sales contracts. Case No. 51,660 was filed in Douglas County District Court, and No. 52,320 was filed in Shawnee County District Court. In each case plaintiff Ed Marling Stores, Inc., recovered the balances due on the conditional sales contracts. However, the

final decisions on the defendants' counterclaims for costs and attorney fees, based upon the allegations of plaintiff's violation of the disclosure provisions of the Federal Truth in Lending Act and the Kansas Uniform Consumer Credit Code, resulted in a judgment in favor of plaintiff Ed Marling Stores, Inc., in case No. 51,660, and in favor of defendant Richardson, in case No. 52,320.

The ultimate question to be decided on this consolidated appeal is whether the plaintiff violated K.S.A. 16a-3-206, which incorporates the Federal Truth in Lending Act, and if so, whether it nevertheless is excused from liability under K.S.A. 16a-5-203.

In case No. 51,660, defendant Cheryl Miracle signed the name of her husband to a conditional sales contract and security agreement for the purchase of a Sony AM-FM cassette stereo from plaintiff Ed Marling Stores, Inc. She defaulted on the payments and plaintiff filed suit in Douglas County either for repossession of the merchandise, or if repossession could not be effectuated, for the balance due under the contract. Defendants counterclaimed, alleging that the conditional sales contract violated certain disclosure requirements of the Federal Truth in Lending Act and the Kansas Uniform Consumer Credit Code because it failed to disclose the amount of the "unpaid balance."

The trial court rendered judgment for the plaintiff on its petition and on the defendants' counterclaim. Specifically, the trial court found:

"From the evidence submitted at trial and the briefs filed in this case . . . the plaintiff substantially complied with all applicable requirements and the contract when read as a whole is clear and unambiguous and does not require the repeat use of the term 'Unpaid Balance.'"

In case No. 52,320 plaintiff brought suit against the defendant Kathryn Richardson for a transaction similar to the one described in No. 51,660. The same type of counterclaim was filed by the defendant. The Shawnee County District Court entered judgment in favor of defendant upon the defendant's counterclaim and awarded defendant twice the finance charge of the transaction in question, and costs, including attorney fees pursuant to 15 U.S.C.S. § 1640(a) (Supp. 1980) and K.S.A. 16a-5-203. Judgment was rendered in favor of plaintiff for the amount due under the conditional sales contract.

These appeals question whether the failure of Ed Marling Stores, Inc., to include the term "unpaid balance" on its condi-

tional sales contracts violated the Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (1976), which is incorporated in the Kansas Uniform Consumer Credit Act. See K.S.A. 16a-1-302 and 16a-3-206. There is no Kansas case law on this issue.

The purpose of the Federal Truth in Lending Act is set forth in 15 U.S.C. § 1601(a) (1976):

"The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this title [15 USC §§ 1601 *et seq.*] to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."

15 U.S.C. § 1631 (1976) sets forth the general disclosure requirements in transactions governed by the Federal Truth in Lending Act. As all parties concede that the contracts are for consumer credit sales, not under an open-end credit plan, 15 U.S.C. § 1638 (1976) prescribes the applicable items which must be disclosed by a creditor.

"(1) The cash price of the property or service purchased.

"(2) The sum of any amounts credited as downpayment (including any trade-in).

"(3) The difference between the amount referred to in paragraph (1) and the amount referred to in paragraph (2).

"(4) All other charges, individually itemized, which are included in the amount of the credit extended but which are not part of the finance charge.

"(5) The total amount to be financed (the sum of the amount described in paragraph (3) plus the amount described in paragraph (4)).

"(6) Except in the case of a sale of a dwelling, the amount of the finance charge, which may in whole or in part be designated as a time-price differential or any similar term to the extent applicable."

Disclosures (7) through (10) are irrelevant to these cases.

15 U.S.C. § 1631 (1976) authorizes the Board of Governors of the Federal Reserve System to implement the disclosure requirements and the Board so responded with "Regulation Z." See 12 C.F.R. Part 226 (1980). (See also 15 U.S.C. § 1604 and § 1632 [1976]).

Implicated in this action are the disclosure requirements promulgated by the Board and contained in 12 C.F.R. § 226.8(c)

(1980). The following information must be disclosed by the creditors in the consumer credit sales:

"(1) The cash price of the property or service purchased, using the term 'cash price.'

"(2) The amount of the downpayment itemized, as applicable, as downpayment in money, using the term 'cash downpayment,' downpayment in property, using the term 'trade-in' and the sum, using the term 'total downpayment.'

"(3) The difference between the amounts described in paragraphs (c)(1) and (2) of this section, using the term 'unpaid balance of cash price.'

"(4) All other charges, individually itemized, which are included in the amount financed but which are not part of the finance charge.

"(5) The sum of the amounts determined under paragraphs (c)(3) and (4) of this section, using the term 'unpaid balance.'

"(6) Any amounts required to be deducted under paragraph (e) of this section using, as applicable, the terms 'prepaid finance charge' and 'required deposit balance,' and, if both are applicable, the total of such items using the term 'total prepaid finance charge and required deposit balance.'

"(7) The difference between the amounts determined under paragraphs (c)(5) and (6) of this section, using the term 'amount financed.'

"(8) Except in the case of a sale of a dwelling:

"(i) The total amount of the finance charge, using the term 'finance charge,' and where the total charge consists of two or more types of charges, a description of the amount of each type, and

"(ii) The sum of the amounts determined under paragraphs (c)(1), (4), and (8)(i) of this section, using the term 'deferred payment price.' "

The form conditional sales contract before this court contains the "cash price" (§ 226.8[c][1]); the total amount of downpayment itemized, as applicable, and "total downpayment," (§ 226.8[c][2]); the difference between the two amounts just referred to identified as "unpaid balance of cash price," (§ 226.8[c][3]); all other charges itemized, in this particular action consisting of a net balance due under a prior agreement and official fees (§ 226.8[c][4]); and the amount financed (§ 226.8[c][7]). The contract omits the sum of the amounts of the "unpaid balance of cash price" and "all other charges" not included as part of the finance charge designated as "unpaid balance" as set forth in § 226.8(c)(4)(5). In both of these transactions, the "unpaid balance" is identical to the "amount financed." The amounts discussed in § 226.8(c)(6), *i.e.*, "prepaid finance charge" and "required deposit balance," or the total of such items designated as "total prepaid finance charge and required deposit balance" are also omitted because there were none. The contract contains the requirements of § 226.8(c)(8)(i) and (ii), regarding "finance charges" and "deferred payment

price." The only basis for complaint in both cases is the omission of the words "unpaid balance" as required by § 226.8(c)(5).

Plaintiff argues that the omission of "unpaid balance" does not constitute a violation of Regulation Z because (1) the "unpaid balance" and the "amount financed" were the same; (2) the disclosures provided were sufficient to apprise the consumers of the various charges involved in the transaction; and (3) plaintiff substantially complied with all the requirements. The consumers urge a more strict interpretation of Regulation Z and claim that the failure to include the term "unpaid balance" and the amount thereof violates the act, despite the fact that the amount of the "unpaid balance" was the same as the "amount financed."

Regulation Z fills gaps in the disclosure requirements of 15 U.S.C. § 1638 (1976) with precise terms. By its own language the regulation states that the specified terms must be disclosed "as applicable." Plaintiff suggests that the "unpaid balance" is inapplicable to this transaction because it is the same amount as the "amount financed" which was clearly stated on the sales contract. The consumers assume a different, yet plausible, view. They stress that the "unpaid balance" is a sum of the "unpaid balance of cash price" and "all other charges" not included in the finance charge. Since there were "other charges" in this transaction, the only way to make the computations required by § 226.8(c)(5), *i.e.*, the sum of the "unpaid balance of cash price" and the "other charges" not included as the finance charge, as well as the calculations required in § 226.8(c)(7) would be to conspicuously state the "unpaid balance." This argument depends upon finding a necessity to spell out the mathematical progression of charges contemplated by the section.

Additional sources must be consulted for assistance in determining the validity of the parties' respective claims. Other courts have given considerable deference to the Federal Reserve Board's (FRB) interpretation of the federal statute for which it has responsibility for issuing regulations. *Ives v. W. T. Grant Company*, 522 F.2d 749, 755 (2d Cir. 1975). See also *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 365-66, 36 L.Ed.2d 318, 93 S.Ct. 1652 (1973); *Johnson v. McCrackin-Sturman Ford, Inc.*, 527 F.2d 257 (3d Cir. 1975).

Over the years several agency interpretations have been given

involving the question before the court. An F.T.C. Informal Staff Opinion dated July 21, 1971, states:

"Failure to employ the term 'unpaid balance' on the model form . . . 'What You Ought to Know About Regulation Z' [CCH CONSUMER CREDIT GUIDE ¶ 3853] is an error of omission. The forms contained in the Initial Decision of the Hearing Examiner in *Matter of Zale Corporation,* Docket 8810 [CCH CONSUMER CREDIT GUIDE ¶ 99,688], are merely evidentiary and were not introduced or relied upon for the proposition that 'unpaid balance' is not a required disclosure where appropriate under the Regulation. The enforcement position of this Division has been that a required term must also be used to describe the same amount, whenever: (a) that required term is prescribed by the Regulation as descriptive of an amount which is the sum, product, or difference of two or more amounts, if the sum, product, or difference is itself required to be disclosed in that transaction; or (b) the required term is prescribed by the Regulation as descriptive of an amount required by the Regulation to be used in computing another amount itself required to be disclosed in that transaction." CCH Consumer Credit Guide ¶ 30,705.

As explained above, the "unpaid balances" in these instances are, in fact, the sum of two or more amounts and the sum is required to be disclosed in the transaction. The "unpaid balance" represents the sum of the "unpaid balance of cash price" and all "other charges," not included in the finance charge and the Regulation requires disclosure of the "unpaid balance."

In FRB Letter No. 536 dated September 23, 1971, the "unpaid balance" was deemed appropriately omitted whenever there were no "other charges" to be disclosed pursuant to 12 C.F.R. § 226.8(c)(4) (1980) and no "prepaid finance charges" or "required deposit balances" under § 226.8(c)(6). CCH Consumer Credit Guide ¶ 30,748. Under those circumstances the "amount financed," the "unpaid balance of cash price" and the "unpaid balance" would be the same figure. However, in the plaintiff's contract there were "other charges" to be disclosed pursuant to § 226.8(c)(4).

FRB Letter No. 740 dated December 28, 1973, CCH Consumer Credit Guide ¶ 31,059, approves the elimination of certain prescribed terms for disclosure which are not applicable to a given transaction. However, that letter addressed a transaction on which there were no "finance charges" or "other charges" and it, too, is distinguishable from these cases.

Whether "unpaid balance" is a required disclosure where there are "other charges" but no "prepaid finance charge" or "required deposit balance" in the credit transaction as in this contract was

the subject of FRB Letter No. 842, September 19, 1974. The Board replied to a request:

"We appreciate your view that the definition of the term *amount financed* leaves little doubt as to what it includes on a disclosure statement. However, use of the term *unpaid balance* does offer some assistance to the consumer in understanding a mathematical progression on the Truth in Lending disclosure statement. Therefore, in view of the recent court decisions and other Federal agency opinions, we would advise creditors to incorporate the term into disclosure statements, even though the disclosure statement illustrated on page 22 of the pamphlet, *What You Ought to Know About Truth in Lending,* may indicate that such a disclosure may not be required in such circumstances." CCH Consumer Credit Guide ¶ 31,164.

The letter declined a recommendation that the Board amend § 226.8(c) to make the use of the term "unpaid balance" optional where there are no "prepaid finance charges" and "required deposit balances."

Since the transactions in question, the FRB issued an Official Staff Interpretation, No. FC-0155, which became effective on March 14, 1979 (44 Fed. Reg. 15,474, CCH Consumer Credit Guide ¶ 31,802), in response to a letter requesting an official staff interpretation of § 226.8(c) of Regulation Z. The creditor who was the subject of that letter omitted disclosure of "unpaid balance" required by § 226.8(c)(5) because no "other charges" within the meaning of § 226.8(c)(4) were added to the "unpaid balance of cash price." Thus, the "unpaid balance" was identical to the "unpaid balance of cash price." The opinion referred to Public Information Letters 213, 536 and 740 in support of the creditor's position that only applicable items need be disclosed. The staff adhered to the positions taken in the letters previously cited and authorized certain combinations of disclosures suggested by the creditor under the stated facts. The staff, however, admitted possible limitations on the letter by acknowledging that several federal district courts had reached decisions contrary to its interpretation and cautioned the creditor upon reliance upon the letter in jurisdictions where the district court decisions have been rendered. As discussed above, the letters referred to in the official staff interpretation do not aid the plaintiff.

In summary, the above interpretations clearly provide support for the position advanced by the consumers on these appeals.

The Truth in Lending Act is remedial in nature and, as a consequence, is to be liberally construed in favor of the consumer in order to effectuate the underlying congressional purpose. *N.C.*

*Freed Co., Inc. v. Board of Governors of Fed. Res. Sys.,* 473 F.2d 1210 (2nd Cir.), *cert. denied* 414 U.S. 827 (1973). In this case the conflict is poised between strict enforcement of the technical requirements of the act sought by the consumers (see *Grant v. Imperial Motors,* 539 F.2d 506 [5th Cir. 1976] [failure to itemize official fees]; *Pennino v. Morris Kirschman & Co., Inc.,* 526 F.2d 367 [5th Cir. 1976] [failure to use the term "new balance" in an open revolving charge plan]), and substantial compliance promoted by plaintiff (see *Dixon v. D. H. Holmes Co., Ltd.,* 566 F.2d 571 [5th Cir. 1978]).

Several cases have dealt with the precise issue before this court or a closely analogous one. Perhaps the leading case finding a violation for failure to use the term "unpaid balance" when there were "other charges" pursuant to § 226.8(c)(4) is *Ives v. W. T. Grant Company,* 522 F.2d 749. In that action the contracts in question used the term "amount financed," but not "unpaid balance." The court rejected all of the defenses raised by the creditor in an attempt to escape the penalties for violating the act. Not much analysis is provided for finding the disclosure violation, however. *Lewis v. Walker-Thomas Furniture Co., Inc.,* 416 F. Supp. 514 (D.D.C. 1976), provides more insight into the question. The retail installment contracts in *Lewis* failed to disclose the "unpaid balance" and instead employed the term "total amount financed." The creditor argued that the "unpaid balance" constituted the "amount financed" minus the sum of the total "prepaid finance charges" and "required deposit balances" according to Regulation Z. As there were no "prepaid finance charges" or "required deposit balances" in the contracts, then the dollar figure for the "amount financed" was the same as that for the "unpaid balance." Accordingly, the creditor contended it was under no duty to reveal the same number twice, under different labels, *i.e.,* "unpaid balance" and the "amount financed." The district court cited *Ives* and continued its explanation:

"The very complexity of the statement of defendant's position indicates that it has no place in this area of the law, for it presumes an unrealistic sophistication and knowledge on the part of consumers. Scrupulous adherence to the requirements of the law is necessary to protect the public and to ensure the application of consistent and uniform terminology that is prerequisite to the informed use of credit. And contrary to [the creditor's] assertion, it is simply immaterial whether plaintiff in fact was or was not misled, deceived or confused." 416 F. Supp. at 517.

In *Grey v. European Health Spas, Inc.*, 428 F. Supp. 841 (D. Conn. 1977), a violation was found to exist even when there were no "other charges" and "unpaid balance of cash price" and "unpaid balance" were identical.

The consumers admit that several cases have involved transactions where there were no "other charges" as described in § 226.8(c)(4) and under those circumstances disclosure of the term "unpaid balance" was deemed unnecessary. *Brown v. Providence Gas Co.*, 445 F. Supp. 459 (D. R.I. 1976); *St. Germain v. Bank of Hawaii*, 413 F. Supp. 587 (D. Hawaii 1976). However, the consumers distinguish these cases on the basis that the sum computation defined in § 226.8(c)(5) is eliminated when no "other charges" exist and the "unpaid balance of cash price" and the "unpaid balance" are identical.

Plaintiff attempts to emasculate the persuasive authority of the cases the consumers cite to support their position largely on the grounds that flexibility is to be afforded to the creditor in credit sale transactions and that only substantial compliance with Regulation Z is required. Its main argument is premised on the case of *Dixon v. D. H. Holmes Co., Ltd.*, 566 F.2d 571. The issue in *Dixon* concerned whether the omission of the precise term "unpaid balance of cash price" pursuant to § 225.8(c)(3) constituted a Truth in Lending violation since the contract set out the cash price, the cash down payment and the unpaid balance—amount financed. The Fifth Circuit adopted the decision of the district court as its own. The district court stated:

"It seems to be that the disclosure statement in this case, while, obviously, one could flyspeck it and improve on it from a technical standpoint does what the Truth in Lending Act contemplates, which is make clear to the borrower, in this case the buyer on an installment contract, the cost of his credit, the terms of his credit, and what happens should be fulfill his contract in a way other than by the number of installments called for." 566 F.2d at 571.

In deciding that the omission of the term "unpaid balance of cash price" was not a violation, the court reasoned that from the context of the contract, it was evident that the term "unpaid balance" which was listed referred to the "unpaid balance of cash price." The court found "that substantial and not sacramental compliance is what is necessary." 566 F.2d at 571.

Plaintiff suggests that the *Dixon* case undermines those opinions cited by the consumers requiring disclosure of unpaid balance. However, the Fifth Circuit commented upon *Dixon* in a

later case involving a retail installment sales contract for the purchase of an automobile. In *Smith v. Chapman,* 614 F.2d 968 (5th Cir. 1980), the creditor defended on the ground he had substantially complied with the terms of the Truth in Lending Act and Regulation Z. The Fifth Circuit specifically noted: "The Appellant [creditor] misconceives both the applicable standard for compliance with TILA, as well as the purpose of the Act." 614 F.2d at 971. The court then reiterated the standards which have evolved to govern alleged TILA violations. It noted:

"It is now well-settled that an objective standard is used in determining violations of TILA. It is not necessary that the plaintiff-consumer actually have been deceived in order for there to be a violation. *McGowan v. King, Inc.,* 569 F.2d 845, 849 (5th Cir. 1978). . . .

"Second, the applicable standard is strict compliance with the technical requirements of the Act. Only adherence to a strict compliance standard will promote the standardization of terms which will permit consumers readily to make meaningful comparisons of available credit alternatives. 15 U.S.C.A. § 1601; *Pennino v. Morris Kirschman and Co., Inc.,* 526 F.2d 367, 370 (5th Cir. 1976); *Houston v. Atlanta Federal Savings & Loan Association,* 414 F. Supp. 851, 855 (N.D. Ga. 1976); *Powers v. Sims & Levin Realtors,* 396 F. Supp. 12, 20 (E.D. Va. 1975)." 614 F.2d at 971.

The court directly confronted the argument made by plaintiff concerning *Dixon v. D. H. Holmes Co., Ltd.* as follows:

"Strict compliance does not necessarily mean punctilious compliance if, with minor deviations from the language described in the Act, there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation. This is what this Court meant in *Dixon v. D. H. Holmes Company, Ltd.,* 566 F.2d 571 (5th Cir. 1978)." 614 F.2d at 972.

The creditor in *Smith* argued that *Dixon* created a substantial compliance standard but the Fifth Circuit dispelled that notion.

"The District Court Judge in *Dixon* was merely saying that it is not necessary to 'flyspeck' the language of credit disclosures. He was not saying it is unnecessary to make the disclosure in the proper technical form and in the proper locations on the contract, as mandated by the requirements of TILA and Regulation Z.

"Moreover, the *Dixon* case imposes an objective standard—the District Court Judge looked at the provisions in question objectively and concluded that they were clearly stated. [The creditor] would have us hold, not only that the applicable standard of compliance is less than strict, but also that it is achieved when the debtor in question understood the terms of the contract. We reject [the creditor's] proposed standard of review. 614 F.2d at 972.

Based upon a review of the Federal Truth in Lending Act itself, the applicable requirements of Regulation Z as well as the staff

and judicial interpretations, the weight of the authority supports the consumers' contention that failure to include the term "unpaid balance," despite the fact that the figure representing the term is identical to the figure of the "amount financed" which was disclosed on the contract, constitutes a Truth in Lending violation. A purpose of the Truth in Lending Act was to aid consumers in making informed use of credit. To assure this goal it is necessary to meaningfully disclose credit terms so that consumers can readily compare credit terms available to them from a variety of sources. We find that Kansas should follow the authority as set forth above, and we find that in these two cases the plaintiff failed to comply with K.S.A. 16a-3-201 *et seq.*

Under the provisions of K.S.A. 16a-5-203, any violation of the Federal Truth in Lending disclosure requirements subjects the violator to payment to the consumer the sum of "(*a*) twice the amount of the finance charge in connection with the transaction, but the liability pursuant to this paragraph shall be not less than one hundred dollars ($100) or more than one thousand dollars ($1,000); and (*b*) in the case of a successful action to enforce the liability under paragraph (*a*), the costs of the action together with reasonable attorney's fees as determined by the court."

K.S.A. 16a-5-203 and 15 U.S.C.S. § 1640 (Supp. 1980) set up several defenses for the creditor. K.S.A. 16a-5-203(3) provides:

"A creditor may not be held liable in any action brought under this section for a violation of the provisions of sections 1 through 131 [16a-1-101 through 16a-9-102] of this act if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid the error."

K.S.A. 16a-5-203(7) also provides that liability under the provisions of K.S.A. 16a-5-203 is in lieu of liability under the Federal Truth in Lending Act.

Plaintiff cites K.S.A. 16a-5-203(3) and 15 U.S.C. § 1640(c) (1976), which is its federal counterpart, to excuse itself from liability even if this court should find the term "unpaid balance" to be required on the ground that the omission was unintentional and resulted from a bona fide error. However, the real thrust of its defense lies under 15 U.S.C.S. § 1640(f) (Supp. 1980), which proscribes imposition of liability for any disclosure violation done or omitted "in good faith in conformity with any rule, regulation, or interpretation thereof by the Board or in conformity

with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe" even if the rule, regulation, etc., is later amended, rescinded or determined to be invalid for any reason. Plaintiff claims it relied on the Federal Reserve Board's model for retail installment contracts contained in a Federal Reserve Board pamphlet entitled "What You Ought to Know About Regulation Z."

Before evaluating the substance of plaintiff's argument, we must first address Miracles' contention that plaintiff may not raise this defense on appeal because it did not raise it in the trial court. A review of the pleadings indicates that while plaintiff pleaded any violation was unintentional and resulted from a bona fide error notwithstanding maintenance of procedures reasonably adopted to avoid the error, nevertheless, at the Miracle trial, absolutely no evidence was introduced by plaintiff that it had, in fact, relied upon any of the documents listed in its brief when it prepared the sales contract. The only evidence on the subject was an affidavit by Dale Talmage, plaintiff's employee, which was submitted with the plaintiff's trial brief. He explained that in January of 1976, plaintiff updated its installment contracts to comply with the applicable state and federal consumer credit laws. The contract under scrutiny in this action was first used in January, 1976. Nothing in that affidavit states that plaintiff relied upon any of the cited documents in preparing its contract. Thus, plaintiff failed to establish its defense by a preponderance of the evidence as required by the statute. The same failure occurred in the Richardson proceedings.

There should be some flexibility in determining whether a creditor's defense is legitimate. However, in this particular case, plaintiff simply failed to demonstrate that it had truly relied upon the model contract contained in the pamphlet "What You Ought to Know About Regulation Z." Thus, we find that the disclosure omissions constituted a violation of Truth in Lending and that plaintiff was liable for the statutory penalties.

The judgment is affirmed in case No. 52,320. In case No. 51,160, the judgment for plaintiff against defendant on its petition is affirmed. The judgment for plaintiff against defendant on the defendant's counterclaim is reversed and remanded with

directions that judgment be entered for defendant in an amount determined by the trial court to be within the limits prescribed in K.S.A. 16a-5-203(1)(*a*) and (*b*). Defendants are awarded additional attorney fees against plaintiff in the amount of $600 for this consolidated appeal.

HERD, J.: I concur with the majority that Ed Marling Stores, Inc. failed to strictly comply with the technical requirement of the Truth in Lending Act but dissent from the awarding of penalties and fees because the borrowers by their own admissions were not misled. The omission of the item "unpaid balance" where "amount financed" is provided and is the same figure is not damaging to the borrowers. I would hold that proof of an unintentional act or bona fide error was not necessary to excuse a lender under the circumstances of this case.