(638 P.2d 383)

No. 52,911

FORBES CREDIT UNION, *Appellant,* v. RONNIE C. MEWHINNEY, *Appellee.*

Opinion filed January 7, 1982.

*James P. Nordstrom,* of Fisher, Patterson, Sayler & Smith, of Topeka, for appellant.

*Lowell C. Paul,* of Legal Aid Society of Topeka, Inc., for appellee.

Before JUSTICE HOLMES, presiding, MEYER, J., and HARRY G. MILLER, District Judge Retired, assigned.

MILLER, J: This case began as a lawsuit filed by the plaintiff, Forbes Credit Union, against the defendant, Ronnie C. Mewhinney, to recover on a promissory note for money loaned to defendant under plaintiff's open-end credit plan. Defendant filed a counterclaim alleging violations of the Federal Truth in Lending Act. Both parties moved for summary judgment on the counterclaim, and this appeal arises from the decision of the trial court in granting summary judgment in favor of defendant on the counterclaim.

The trial court found that plaintiff had violated the disclosure requirements of the Truth in Lending Act in two separate respects, and entered judgment in favor of defendant on the counterclaim, by way of set-off against plaintiff's claim, for twice the amount of the finance charges, including insurance charges, and for costs and attorney fees.

The Truth in Lending Act (15 U.S.C. § 1601 *et seq.*) was passed by Congress in 1968 and became effective on May 29, 1968. The requirements of the act are implemented by the provisions of 12 C.F.R. § 226, commonly known as Regulation Z. On January 1, 1974, the disclosure requirements of the Truth in Lending Act and Regulation Z were incorporated into Kansas law by the adoption of the Uniform Consumer Credit Code (K.S.A. 16a-1-302, 16a-3-206).

The Truth in Lending Act was enacted by Congress in response to the divergent, and sometimes fraudulent, practices by which credit customers were apprised of the terms of the credit extended to them. These practices often prevented consumers from shopping for the best credit terms available, and sometimes led to them assuming liabilities they could not meet. *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 363, 36 L.Ed.2d 318, 93 S.Ct. 1652 (1973). The congressional intent underlying this legislation was not only to protect consumers from inaccurate and unfair credit billing and credit card practices but to avoid the uninformed use of credit by compelling a meaningful disclosure of credit terms so that the consumer would be able to compare more readily the various credit terms available to him. (15 U.S.C. § 1601.) This was sought to be done by requiring all creditors to disclose credit information in a uniform manner, and by requir-

ing all additional mandatory charges imposed by the creditor as an incident to extending credit to be included in the computation of the applicable percentage rate.

The Act and Regulation Z set out in precise form and content the credit information required to be given by a creditor to a consumer in conjunction with all credit transactions within the purview of the act. The courts have recognized that strict enforcement of these requirements is mandatory if the purpose of the Act is to be achieved. There is no requirement that a consumer must have been misled or deceived or otherwise injured in order to be entitled to the penalties, fees and costs provided for in the Act. *Smith v. Chapman,* 614 F.2d 968 (5th Cir. 1980), *Ed Marling Stores, Inc. v. Miracle,* 6 Kan. App. 2d 175, 627 P.2d 352 (1981).

It is in this context that we must examine the contentions of the parties here.

The facts pertinent to this appeal are not disputed. On November 8, 1976, plaintiff and defendant entered into an agreement denominated "Open End Promise to Pay to the Forbes Credit Union" whereby the defendant agreed to repay to plaintiff all sums loaned to defendant from time to time by the plaintiff.

On November 15, 1976, plaintiff made the first advance to defendant, pursuant to the open-end credit agreement, in the sum of $1,955.21, and obtained from defendant a security agreement on defendant's car to secure repayment. Contemporaneously therewith, and in order to comply with the requirements of 12 C.F.R. § 226.7(a), plaintiff gave defendant a disclosure statement entitled "Credit Union Application — Notice of Terms — Disclosure Statement."

Of the amount first advanced by plaintiff, $55.21 was for group creditors' disability insurance which defendant purchased from plaintiff, although he was advised that such insurance was not required as a condition of the loan.

On March 25, 1977, plaintiff and defendant entered into another open-end agreement identical in terms to the agreement of November 8, 1976.

On March 28, 1977, plaintiff advanced to defendant an additional sum of $200.76. This sum was added to the outstanding balance of the original loan, creating a total balance of $1,857.90. Contemporaneously therewith, and in order to comply with 12 C.F.R. § 226.7(a), plaintiff gave defendant another disclosure

statement on a form identical to the one used on November 15, 1976.

At the same time the insurance coverage previously purchased by defendant was cancelled and defendant was refunded the unearned premium in the amount of $34.97. Defendant then purchased new insurance coverage sufficient to cover the new outstanding balance of his loan. Defendant was again advised that such insurance was not required by plaintiff.

The trial court found, first, that plaintiff had violated the disclosure requirement of 12 C.F.R. § 226.7(a)(7) which provides:

"§ 226.7 **Open end credit accounts — specific disclosures.**

(a) *Opening new account.* Before the first transaction is made on any open end credit account, the creditor shall disclose to the customer in a single written statement, which the customer may retain, in terminology consistent with the requirements of paragraph (b) of this section, each of the following items, to the extent applicable:

. . . .

(7) The conditions under which the creditor may retain or acquire any security interest in any property to secure the payment of any credit extended on the account, and a description or identification of the type of the interest or interests which may be so retained or acquired."

We agree. The disclosure statement given to defendant on November 15, 1976, at the time of the first advance on the loan, and again on March 28, 1977, at the time of the second advance, relating to the above regulation, reads in part as follows:

"Where a security agreement in the nature of a chattel mortgage has *previously been given* to the above named credit union and said Security Agreement has not been released or terminated, the credit union shall retain such security interest in the property therein described to secure payment of any credit extended on this open end plan until all liabilities to the credit union have been paid in full and then only upon a request for termination of the Security Agreement. A true copy of the Security Agreement was heretofore furnished to the borrowing member at the time of the signing of the Security Agreement in accordance with the requirements of the Uniform Commercial Code. Any balance in the member's share account shall also be security. Where a payroll deduction authorization has previously been given to the member's employer authorizing him to deduct money from the member's pay each payroll period to be transmitted currently to the above named credit union, such authorization shall remain in effect until cancelled or altered by the undersigned in a written notice. This disclosure in no way alters the terms of said authorization." (Emphasis supplied.)

The act mandates that the required disclosures be given before such an account is opened. 15 U.S.C. § 1637(a) and 12 C.F.R. § 226.7(a) require that the disclosure be given before the first

transaction is made on the account. Under either requirement, the required disclosure in this case was not timely made. The account was opened by the agreement entered into on November 8, 1976. The first transaction under the account took place on November 15, 1976, at which time the security agreement was executed and the loan proceeds disbursed.

Disclosure is required prior to the time a customer contractually binds himself to accept particular credit terms. *Copley v. Rona Enterprises, Inc.,* 423 F.Supp. 979 (S.D. Ohio 1976). A disclosure made contemporaneously with the execution of the security agreement and disbursement of the loan does not meet the dictates of the Act or Regulation Z. *Goldman v. First Nat. Bank of Chicago,* 532 F.2d 10 (7th Cir.), *cert. denied* 429 U.S. 870 (1976).

Moreover, the above disclosure statement discloses only the conditions under which a security interest previously given may be *retained* by the lender. It does not disclose any conditions under which the lender may *acquire* a security interest or a description of the interest to be taken, such as for example, that under Kansas law, any loan made by a credit union in excess of $1,000.00 requires a security interest to secure repayment of the loan. K.S.A. 17-2201 *et seq.*

While there appear to be no cases concerning the exact language used in plaintiff's disclosure statement, several cases involving open end credit sales interpreting disclosure requirements under the Act are helpful. In *Willis v. American National Stores,* 350 F.Supp. 173, 175-76 (N.D. Ga. 1972), the court held that a disclosure statement that merely stated that "the seller may, at his option, retain a security interest in the merchandise at the time of purchase" was not specific enough because it did not sufficiently inform the consumer so that he may "compare . . . various credit terms available to him."

In *Pennino v. Morris Kirschman & Co., Inc.,* 526 F.2d 367, 371 (5th Cir. 1976), the court ruled that the disclosure stating that the creditor was "hereby granted a security interest in the merchandise purchased . . . in accordance with existing state laws" was inadequate in that it failed to specifically disclose a "vendor's privilege", a lien granted to the creditor by Louisiana law.

In *Jacklitch v. Redstone Federal Credit Union,* 615 F.2d 679 (5th Cir. 1980), the court ruled that a disclosure was inadequate

that did not disclose an after-acquired property clause in the security agreement that could be construed to include replacements and additions to the property itself.

These cases all recognize that the disclosures required by the Act and 12 C.F.R. § 226.7(a) must be sufficiently specific to apprise the consumer of the precise circumstances under which a security interest may be acquired as well as retained by the creditor so that the consumer may explore other credit alternatives.

The trial court found also that plaintiff had violated 12 C.F.R. § 226.4(a)(5) concerning charges for credit disability insurance. This regulation, implementing 15 U.S.C. § 1605 of the Act, reads:

"§ 226.4 **Determination of finance charge.**

(a) *General rule.* Except as otherwise provided in this section, the amount of the finance charge in connection with any transaction shall be determined as the sum of all charges, payable directly or indirectly by the customer, and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit, whether paid or payable by the customer, the seller, or any other person on behalf of the customer to the creditor or to a third party, including any of the following types of charges:

. . . . .

(5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless

(i) The insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; *and*

(ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance."

Both disclosure statements given to defendant at the time of extending credit on November 15, 1976, and on March 28, 1977, contained an appropriate paragraph informing defendant that group credit disability insurance was not required to obtain the loan, with appropriate spaces to disclose the cost of such insurance and for defendant to give his separately signed affirmative indication for such insurance if desired. In both disclosure statements, these spaces were left blank. The defendant did, however, purchase such insurance from the plaintiff in connection with both advances and the premiums were included in the amount advanced, upon which the finance charge was calculated and not as a part of the finance charge.

The plaintiff argues that the amount of the insurance premium was inserted on the insurance form, that defendant knew exactly

■■■

how much it cost and what he was receiving, and that the failure to fill in the blanks in the disclosure statement was, at most, an unintentional and bona fide error for which it should not be held liable.

The regulations are very specific in requiring (1) the disclosure of the optional nature of the insurance and (2) a "specific dated and separately signed affirmative indication" for such insurance. Otherwise, the cost of such insurance must be included as part of the finance charges imposed by the creditor. *Copley v. Rona Enterprises, Inc.*, 423 F.Supp. at 983. Requiring anything less is to ignore the clear language of the regulation. The court correctly concluded that plaintiff had violated this regulation.

15 U.S.C. § 1640(c), to which K.S.A. 16a-5-203(3) is substantially identical, provides:

"A creditor may not be held liable in any action brought under this section for a violation of this subchapter if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

The leading case construing this provision is *Ratner v. Chemical Bank New York Trust Company*, 329 F.Supp. 270 (S.D. N.Y. 1971), where the court found that the "good faith" defense was specifically intended to apply to clerical errors of all sorts, although this case has been criticized. See *Welmaker v. W.T. Grant Company*, 365 F.Supp. 531 (N.D. Ga. 1972). Regardless, plaintiff has made no showing that it maintained any procedures reasonably adapted to avoid any such error. It concedes, in fact, that it was the customary practice in such case to insert the amount of the premium on an insurance form. Clearly plaintiff has not sustained the burden of proof imposed upon it in this respect. *Ed Marling Stores, Inc. v. Miracle*, 6 Kan. App. 2d 175.

Plaintiff next challenges the propriety and amount of attorney fees granted counsel for defendant for the reason that defendant was represented by a Legal Aid Society. K.S.A. 16a-5-203(1) and 16a-5-201(8) vest authority in the court to award reasonable attorney fees. *Ed Marling Stores, Inc. v. Miracle*, 6 Kan. App. 2d 175. We find no abuse of discretion in the amount of fees awarded by the court. An additional $750.00 is awarded to counsel for defendant as attorney fees for services in connection with this appeal.

Affirmed.